**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE, *et al.*,** *Plaintiffs*, v. **DEFENDING AMERICA PAC, INC., *et al.*** *Defendants*. | **CIVIL ACTION** **No.: 2:26-cv-05544** |

**ORDER**

**AND NOW**, on this ________ day of _____________, 2026, upon consideration of Defendants' Motion to Dismiss the Complaint and Application for attorneys' fees and costs pursuant to Pennsylvania's Uniform Public Expression Protection Act, 42 PA C.S. § 8340.18, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1. Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Complaint is **DISMISSED** *with prejudice*;
2. Defendants' application for attorneys' fees and costs is **GRANTED**;
3. Defendants shall file a Statement of Fees and Costs within fourteen (14) days of this Order, and Plaintiffs shall pay the amount set forth therein, within fourteen (14) days of the filing of that Statement.

**BY THE COURT:**

_____________________________ **J.**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE, *et al.*,**<br>*Plaintiffs*,<br>v.<br>**DEFENDING AMERICA PAC, INC., *et al.***<br>*Defendants*. | **CIVIL ACTION**<br>**No.: 2:26-cv-05544** |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) & 12(b)(6) AND APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

**AND NOW** comes Defendants Defending America PAC, Inc. ("DAP") and Chris Pack ("Mr. Pack") (collectively, "Defendants"), by and through the undersigned counsel, Bochetto & Lentz, P.C. ("B&L"), hereby submit Defendants' Motion to Dismiss the Complaint filed by Plaintiffs Bob Harvie ("Harvie") and Bob Harvie for Congress (the "Committee") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing, Fed. R. Civ. P. 12(b)(6) for failure to state claims for defamation, and false light invasion of privacy. Defendants hereby apply for fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 PA C.S. § 8340.18. ("Anti-SLAPP Act"). As set forth more fully in the accompanying Memorandum of Law in support hereof, which Defendants incorporate by reference as though set forth in its entirety herein, the Motion to Dismiss should be granted, Plaintiffs' Complaint should be dismissed, *with prejudice*, and fees and costs should be awarded.

**WHEREFORE**, Defendants Defending America PAC, Inc. and Chris Pack respectfully request this Honorable Court grant this Motion to Dismiss the Complaint Under Fed.R.Civ.P. 12(b)(1) & 12(b)(6) and Application for Attorneys' Fees and Costs Pursuant to 42 Pa.C.S.

§8340.18 against Plaintiffs Bob Harvie and Bob Harvie for Congress and dismiss Plaintiffs' Complaint *with prejudice*.

Defendants further request this Honorable Court grant all costs and fees associated with this litigation, along with any other such relief which this Court deems to be in the interest of justice.

Respectfully submitted,

**BOCHETTO LENTZ & HEIM, P.C.**

Date: October 6, 2026

By: */s/ George Bochetto*

George Bochetto, Esquire
PA Bar No.: 27783
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
gbochetto@bochettoandlentz.com
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**LEX POLITICA**
Dennis W. Polio, Esquire
D.C. Bar No.: 198054
611 Pennsylvania Ave. SE, #353
Washington, DC 20003
(540) 268-2806
dpolio@lexpolitica.com
*Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*
Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, George Bochetto, Esquire, hereby certify that on this 6th day of October, 2026, I cause the foregoing Motion to Dismiss and accompanying memorandum of law to be served on counsel for all parties that have appeared via the Court's ECF filing system.

Date: October 6, 2026

*/s/ George Bochetto*
George Bochetto, Esquire
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOB HARVIE, *et al.*,** | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | **No.: 2:26-cv-05544** |
| v. | : | |
| **DEFENDING AMERICA PAC, INC., *et al.*** | : | |
| *Defendants*. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) & 12(B)(6) AND APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

## TABLE OF CONTENTS

***Page(s)***

I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 1

A. LEGAL STANDARD .......... 2

B. BOB HARVIE FOR CONGRESS LACKS ARTICLE III STANDING AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(1) .......... 3

C. COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION .......... 5

a. The challenged statements are not capable of defamatory meaning .......... 6

b. Defendants' statements concerned a public figure and matters of public concern and are entitled to Constitutional protection under the First Amendment .......... 15

c. Plaintiffs' fail to allege Defendants made any statements regarding Bob Harvie for Congress .......... 18

D. COUNT II FAILS TO STATE A CLAIM FOR FALSE LIGHT .......... 18

a. Count II fails as to Bob Harvie for Congress because a political action committee has no personal right of privacy .......... 19

b. The "subject" statements do not create a false impression .......... 19

c. The FBI statements fail to meet the standard of "highly offensive to a reasonable person" .......... 20

d. False light carries the same First Amendment protections as defamation .......... 21

E. CLAIMS BASED ON STATEMENTS FIRST PUBLISHED BEFORE AUGUST 5, 2025, ARE TIME-BARRED .......... 23

F. FEES SHOULD BE AWARDED UNDER PENNSYLVANIA'S ANTI-SLAPP ACT .......... 23

III. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**_Page(s)_**

***Cases***

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 2, 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5

*Bethel v. Jendoco Constr. Corp.*,
570 F.2d 1168 (3d Cir. 1978) ... 20

*Beverly Enters., Inc. v. Trump*,
182 F.3d 183 (3d Cir. 1999) ... 7

*Boos v. Barry*,
485 U.S. 312 (1988) ... 16

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ... 13, 14

*Constitution Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ... 2

*Donald J. Trump for President, Inc. v. Boockvar*,
502 F. Supp. 3d 899 (M.D. Pa. 2020) ... 4

*Donald J. Trump for President, Inc. v. Secretary of Pennsylvania*,
830 F. App'x 377 (3d Cir. 2020) ... 4

*Doroshin v. Drexel Univ.*,
2024 WL 4349948 (E.D. Pa. Sept. 30, 2024) ... 23

*Edelman v. Croonquist*,
2010 WL 1816180 (D. N.J. 2010) ... 8

*Emekekwue v. Offor*,
26 F. Supp. 3d 348 (M.D. Pa. 2014) ... 10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ... 5

*FEC v. Ted Cruz for Senate*,

596 U.S. 289 (2022)......................................................................................... 4

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) ......................................................................................... 3

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ......................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*,
528 U.S. 167 (2000)......................................................................................... 3

*Gibney v. Fitzgibbon*,
547 F. App'x 111 (3d Cir. 2013) ......................................................................................... 7

*Graboff v. Colleran Firm*,
744 F.3d 128 (3d Cir. 2014) ........................................................................ 18, 19, 20, 21, 22

*Harris by Harris v. Easton Pub. Co.*,
153, 483 A.2d 1377 (Pa. Super. 1984) ......................................................................................... 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)......................................................................................... 9, 17

*In re Phila. Newspapers*,
690 F.3d 161 (3d Cir. 2012) ......................................................................................... 23

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ......................................................................................... 2, 4

*Joseph v. Scranton Times L.P.*,
959 A.2d 322 (Pa. Super. Ct. 2008) ......................................................................................... 8

*Kendall v. Daily News Pub. Co.*,
716 F.3d 82 (3d Cir. 2013) ......................................................................................... 17

*Koch v. Goldway*,
817 F.2d 507 (9th Cir. 1987)......................................................................................... 8

*Krajewski v. Gusoff*,
53 A.3d 793 (Pa. Super. Ct. 2012) ......................................................................................... 7, 21

*Kryeski v. Schott Glass Techs., Inc.*,
626 A.2d 595 (Pa. Super. Ct. 1993) ......................................................................................... 7

*Larsen v. Phila. Newspapers, Inc.*,
375 Pa.Super. 66, 543 A.2d 1181 (1988) (en banc) ......................................................................................... 19

*Lento Law Group PC v. Estrada*,
2026 WL 2100471 (E.D. Pa. July 21, 2026) ........ 6, 7, 24, 25

*Levin v. McPhee*,
119 F.3d 189 (2d Cir. 1997) ........ 13, 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 3

*Maier v. Maretti*,
671 A.2d 701 (Pa. Super. Ct. 1995) ........ 8

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) ........ 5, 6, 8, 16, 21

*Monge v. Univ. of Pennsylvania*, Civ. A. No. 22-2942,
2023 U.S. Dist. LEXIS 11212 (E.D. Pa. Jan. 23, 2023) ........ 2

*Monge v. Univ. of Pennsylvania*,
674 F. Supp. 3d 195 (E.D. Pa. 2023) ........ 6, 7

*Moore v. Cecil*,
174 F.4th 862 (11th Cir. 2026) ........ 17

*Moore v. Cobb-Nettleton*,
889 A.2d 1262 (Pa. Super. Ct. 2005) ........ 8

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997) ........ 2

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........ 17

*Norton v. Glenn*,
860 A.2d 48 (Pa. 2004) ........ 17

*Nothstein v. USA Cycling*,
499 F. Supp. 3d 101 (E.D. Pa. 2020) ........ 15

*Ollman v. Evans*,
750 F.2d 970 (D.C. Cir. 1984) ........ 9

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020) ........ 7, 8, 21, 22

*Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) .......... 2

*Redco Corp. v. CBS, Inc.*,
758 F.2d 970 (3d Cir. 1985) .......... 6

*Salaam v. Trump*,
777 F. Supp. 3d 414 (E.D. Pa. 2025) .......... 6

*Snyder v. Phelps*,
562 U.S. 443 (2011) .......... 16

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 3

*Synygy, Inc. v. Scott-Levin, Inc.*,
51 F. Supp. 2d 570 (E.D. Pa. 1999) .......... 15

*Tannous v. Cabrini Univ.*,
697 F. Supp. 3d 350 (E.D. Pa. 2023) .......... 16, 23

*Tannous v. Cabrini Univ.*,
702 F. Supp. 3d 317 (E.D. Pa. 2023) .......... 21, 22, 23

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
497 Pa. 460 (1981) .......... 6, 11

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) .......... 19

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) .......... 4

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) .......... 17

*Tucker v. Philadelphia Daily News*,
848 A.2d 113 (Pa. 2004) .......... 7, 14

*U.S. Healthcare v. Blue Cross of Greater Phila.*,
898 F.2d 914 (3d Cir. 1990) .......... 6, 8, 21

*Walker v. Grand Cent. Sanitation, Inc.*,
634 A.2d 237 (Pa. Super. Ct. 1993) .......... 15

*Wang v. Univ. of Pittsburgh*,
181 F.4th 301 (3d Cir. 2026) .......... 20

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 4

*Weaver v. Lancaster Newspapers, Inc.*,
926 A.2d 899 (Pa. Super. 2007) .......... 16

***Statutes***

42 Pa. C.S. § 5523(1) .......... 23

42 Pa. C.S. § 8340.13 .......... 24

42 Pa. C.S. § 8340.15 .......... 24, 25

42 Pa. C.S. § 8340.16(c) .......... 25

42 Pa. C.S. § 8340.18 .......... 24, 25

42 Pa. C.S. § 8341(b) .......... 23

42 Pa. C.S. § 8343(a) .......... 6

42 Pa. C.S. § 8343(a)(6) .......... 14

42 Pa. C.S.A. § 8343(b)(1) .......... 20

***Court Rules***

Fed. R. Civ. P. 12(b)(1) .......... 1, 3, 25
Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 25

***Constitutions***

U.S. Const. art. III .......... 3

***Other***

Restatement (Second) of Torts § 652I .......... 19

U.S. Dep't of Justice, Justice Manual § 9-11.151 (2020) .......... 9, 10, 20

## I. INTRODUCTION

This matter arises from Plaintiffs Bob Harvie ("Harvie") and Bob Harvie for Congress' (the "Committee") (collectively, the "Plaintiffs") use of lawfare tactics to silence their political opponents during Harvie's campaign for the United States House of Representatives in Pennsylvania's 1st Congressional District. Defendants Defending America PAC, Inc. and Chris Pack (collectively, the "Defendants") have done nothing more than exercise their first amendment right to criticize Harvie's candidacy. In turn, Plaintiffs have chosen to weaponize the legal system by bringing this frivolous and strategic lawsuit against of public participation (SLAPP) enunciated by our legislature.

Contrary to Plaintiffs' averments, this is not an attempt to damage Harvie's reputation in his community. Rather, Defendants are providing relevant information regarding his background to the electorate in his congressional district. Plaintiffs, in a blatant attempt to conceal Harvie's past from voters, stifle the embarrassing revelations about him, and deprive the people of this crucial information, initiated this litigation against Defendants to silence their protected political speech. In doing so, Plaintiffs mischaracterize Defendants' protected political speech in a thinly veiled attempt to drag this Court into the 2026 campaign for United States Representative in Pennsylvania's 1st Congressional District. As public figures, Congressional candidates are subject to significant and intense scrutiny, including their background and history, as well as their interactions with law enforcement and the legal system, as they are matters of public concern. To make matters worse for Plaintiffs, they fail to plead a single fact asserting the Committee suffered any individualized harm sufficient to instill Article III standing.

The Eastern District is not a playground for allegedly insulted Parties to restrict free speech, and this Court should decline the invitation to do so. Accordingly, and as set forth more fully below,

the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and fees and costs should be awarded under the Anti-SLAPP Act.

## II. LEGAL ARGUMENT

### A. LEGAL STANDARD

The standard under Fed. R. Civ. P. 12(b)(6) is well settled:

> An action may be dismissed if fail[s] to state a claim upon which relief can be granted. At the motion to dismiss stage, the Court must accept factual allegations as true, but it is not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation. To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The complaint must show more than a sheer possibility that a defendant has acted unlawfully, and the factual allegations must be enough to raise a right to relief above the speculative level.

*Monge v. Univ. of Pennsylvania*, Civ. A. No. 22-2942, 2023 U.S. Dist. LEXIS 11212, at *9 (E.D. Pa. Jan. 23, 2023) (citations and quotations omitted). Notably, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal citation omitted). A court, therefore, cannot "assume that the [plaintiff] can prove facts that it has not alleged" or accept as true "unsupported conclusions and unwarranted inferences." *Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263, n. 13 (3d Cir. 1998).

Further, a facial attack "contests the sufficiency of the pleadings," and the Court applies "the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6) . . ." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). Even on facial attack, conclusory assertions of injury are insufficient. *In re Schering Plough Corp.*

*Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243-44 (3d Cir. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. BOB HARVIE FOR CONGRESS LACKS ARTICLE III STANDING AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(1).

Plaintiffs' Complaint must be dismissed as facially insufficient to the extent it asserts claims on behalf of the Committee, as Plaintiffs have not pled a single fact asserting individualized harm suffered by the Committee, it lacks standing to bring this litigation. Article III of the United States Constitution limits federal judicial power to "cases" and "controversies," and "the core component of standing is an essential and unchanging part of" that limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is therefore jurisdictional and, "without jurisdiction the court cannot proceed at all in any case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (additional citation omitted). The Complaint fails to state a claim upon which relief can be granted, the Committee has failed to plead facts sufficient to establish Article III standing, and Plaintiffs cannot cure those deficiencies through conclusory allegations or unsupported inferences.

The burden of establishing standing rests solely with Plaintiffs. The "failure to allege the elements of standing means that [federal courts] lack jurisdiction to adjudicate their claims." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 203 (3d Cir. 2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. Plaintiffs must demonstrate they have (1) ***suffered an injury in fact***; (2) that is traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision of the court (redressability). *Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). Each Plaintiff must "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Crucially, each Plaintiff's standing is assessed on an individual basis. "[S]tanding is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought. The same principle applies when there are multiple plaintiffs." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (cleaned up); *see also Schering Plough*, 678 F.3d at 245. Courts analyze campaign committees' standing separately from the alleged injuries of the individual plaintiffs. *See Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899 (M.D. Pa. 2020) (Brann, J.) (finding the campaign committee's injury "particularly nebulous because neither in the [complaint] nor in its briefing does the Trump Campaign clearly assert what its alleged injury is." The committee could not rely on individual plaintiffs' injuries; it had to identify its own, and did not.), *aff'd sub nom. Donald J. Trump for President, Inc. v. Secretary of Pennsylvania*, 830 F. App'x 377 (3d Cir. 2020); *Cf. FEC v. Ted Cruz for Senate*, 596 U.S. 289, 296 (2022) (committee and candidate had standing, but each had its own distinct concrete injury).

Therefore, the Committee cannot proceed on a theory of injury to a candidate which it supports, without claiming any injury to itself. When a campaign committee fails to offer a theory of standing that shows a cognizable injury, it "cannot meet its burden of establishing Article III jurisdiction." *Boockvar*, 502 F. Supp. 3d at 916.

In the instant matter, the Complaint only pleads injuries attributable to Harvie. It does not cite to any statements made by Defendants regarding the Committee. Importantly, the Complaint does not allege that the Committee has suffered any injury in fact as a result of any action of Defendants. Instead, the only injuries alleged in the Complaint, concern Harvie, ***individually***. Compl. ¶¶ 90, 97, 98. Harvie and the Committee are separate plaintiffs and distinct legal entities,

Compl. ¶¶ 12-13. In the instant matter, the Committee has failed to plead its own, particularized injury as required by Article III.

Indeed, the Committee merely alleges it "has been forced to divert and reallocate campaign resources" to respond to Defendants' statements. Compl. ¶ 99. Simply put, the only alleged injury suffered by the Committee was that it was forced to perform its core function, campaigning.[1] The Committee cannot manufacture organizational injury by expending resources to further the campaign, its core function. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394-95 (2024) (an organization "cannot spend its way into standing simply by expending money" to oppose a defendant's actions). Moreover, any harm the Committee may allege is conclusory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss"). The Committee has not identified any concrete injury. Accordingly, the Complaint must be dismissed as to the Committee.

### C. **COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION.**

"[F]undamentally, [defamation] is a state cause of action." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (quoting *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985)). Pennsylvania law requires Plaintiffs to plead seven elements:

> (1) that the statement was defamatory; (2) that [Defendants] published it; (3) that the statement was about [Plaintiffs] (4) that readers would understand the statement as defamatory; (5) that readers would understand that the defamatory statement was about [Plaintiffs]; (6) that the publication harmed [them]; and (7) that [Defendants] lacked a "conditional[ ] privilege[ ]" to make that statement.

[1] Notably, the Committee "is the principal campaign committee authorized by Bob Harvie and registered with the Federal Election Commission in connection with his candidacy for office in the U.S. House of Representatives." Compl. ¶ 13.

*McCafferty*, 955 F.3d at 357; *see* 42 Pa.C.S. § 8343(a), *Salaam v. Trump*, 777 F. Supp. 3d 414, 423–24 (E.D. Pa. 2025).

Where plaintiffs meet their burden, it "shifts to the defendants to prove the truth of the defamatory statement, the privileged nature of the communication, or that the subject matter of the defamatory statement is a matter of public concern." *Monge v. Univ. of Pennsylvania*, 674 F. Supp. 3d 195, 205 (E.D. Pa. 2023) (citing 42 Pa. C.S. § 8343(b)).

**a. The challenged statements are not capable of defamatory meaning.**

"When evaluating a defamation claim, 'it is for the court to determine, in the first instance, whether the statement of which the plaintiff complain[s] is capable of a defamatory meaning.'" *Salaam*, 777 F. Supp. 3d at 424 (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990)).

"If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 464-65 (1981). Expressions of opinion are only capable of defamatory meaning if they can "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *PC v. Estrada*, 2026 WL 2100471, at *6 (E.D. Pa. July 21, 2026) (citing *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)). This is because, "when the opinion-holder discloses the factual basis for the idea," a listener can evaluate the soundness of an opinion, making the opinion incapable of defamatory meaning. *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985).

In determining whether a communication is capable of defamatory meaning, Courts will apply a two (2) part test: "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory

in character." *Monge*, 674 F. Supp. 3d 195, 205–06 (citation omitted). "The court must evaluate the statements in context because context may make the plaintiff's interpretation unreasonable even where a statement appears defamatory in isolation." *Lento L. Grp. PC*, 2026 WL 2100471, at *6 (citing *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004)). Where plaintiffs rely on implication rather than the natural meaning of words themselves, they cannot use "innuendo . . . to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (nonprecedential) (internal quotation marks omitted) (quoting *Sarkees v. Warner-W. Corp.*, 37 A.2d 544, 546 (Pa. 1944)). Further, Plaintiffs cannot prevail based on statements which are "merely annoying or embarrassing," mere obscenities or insults, "rhetorical hyperbole," or "vigorous epithet[s]." *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) (quoting *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 601 (Pa. Super. Ct. 1993)).

To be defamatory, a statement of fact must be "provably false" and grievously harm reputation, not just embarrass or annoy. *Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa. Super. Ct. 2012) (noting "a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection" (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990))). Meaning it "could reasonably be understood to imply undisclosed defamatory facts." *Pace*, 432 F. Supp. 3d at 512.

A communication is defamatory in character if it tends to "blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession," *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citations omitted), or if it tends to "lower him in the estimation of the community or . . . deter third persons from associating

or dealing with him," *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995). This is not a low bar.

Importantly, "[p]ure opinions cannot defame." *McCafferty*, 955 F.3d at 357; *see U.S. Healthcare v. Blue Cross of Greater Phila.,* 898 F.2d 914, 927 n.13 (3d Cir. 2020) ("[A] statement of ***pure opinion receives absolute protection under the First Amendment***.") (emphasis added); *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005). If the defendant is "expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021) (citation omitted). "The use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are discouraged, but such comments are not actionable." *Edelman v. Croonquist*, 2010 WL 1816180, at *5 (D. N.J. 2010) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004)).

Here, the statements made by Defendants are not defamatory. Plaintiffs complain of two types of statements, those calling Harvie a "FBI corruption subject" or "under FBI investigation" Compl. at ¶¶ 2, 82 and those concerning a county employee, Compl. at ¶¶ 70-72. Neither of these classes of statements are capable of defamatory meaning when viewed in complete context rather than in the cherry-picked nature of the Complaint.

Plaintiffs fail to sufficiently allege the Statements are capable of a defamatory meaning. Viewed in context, the Statements are matters of opinion or rhetorical hyperbole about a public figure and political opponent. *See Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (Kennedy, J.) ("[W]hen the surrounding circumstances of a statement are those of a heated political debate," certain remarks are commonly considered statements of opinion "where [they] are necessarily

understood as ridicule or vituperation, or both, but not as descriptive of factual matters”). In the “highly charged atmosphere,” of a federal political campaign “many cruel and damaging things [are] said about various candidates for major political offices.” *Ollman v. Evans*, 750 F.2d 970, 1005 (D.C. Cir. 1984) (en banc) (Bork, J., concurring); *see Harte-Hanks Commc'ns, Inc. v. Connaug*hton, 491 U.S. 657, 687 (1989) (quoting *Ollman*, 333, 750 F.2d at 1002 (Bork, J., concurring)) (“When a candidate enters the political arena, he or she ‘must expect that the debate will sometimes be rough and personal.’”). Instantly, every statement cited by Plaintiffs came from a political organization or its president, in the context of a contested congressional election.

Further, Plaintiffs fail to sufficiently allege the Statements are provably false. Mere recitation of the standard is insufficient, and Plaintiffs offer no facts or analysis of how these statements are provably false. Interestingly, Section 9-11.151 of the United States Department of Justice's (“DoJ”) Manual offers a definition for subject of an investigation. The Manual states “a subject of an investigation is a person whose conduct is within the scope of the grand jury's investigation.” *See* U.S. Dep't of Justice, Justice Manual § 9-11.151 (2020)[23] *see* Compl. at ¶ 60. Subjects of an investigation include witnesses. *See Id.* Notably, Plaintiffs' attempt to falsely reframe Defendants' speech to infer Harvie was a “target” of the federal investigation, but the term “target” has its own specific definition in the exact same section of the DoJ's Justice Manual. *See* U.S. Dep't of Justice, Justice Manual § 9-11.151 (2020). The DoJ's definition of the word “subject” fits Harvie's involvement in the federal investigation as, at the very least, a subpoenaed witness.[4]

---

[2] https://www.justice.gov/jm/jm-9-11000-grand-jury.
[3] It is also worth noting that the term “investigation” is not defined by the DoJ's justice manual, further highlighting the fact that Defendants' alleged statements are not provably false, in addition to Plaintiffs' failure to properly cite to any specific statements saying Harvie is “under FBI investigation.”
[4] Moreover, Plaintiffs stretch the FBI statements to change Defendants' speech to say that Harvie was the “target” of a criminal investigation. But, looking at the cited language as alleged: Plaintiffs have never referred to Harvie as a “target” of a criminal investigation nor insinuated that he was. Plaintiffs' attempts to change Defendants' speech and then sue Defendants over that altered wording should not survive a motion to dismiss.

The complained of Statements regarding Harvie's interactions with law enforcement are simply not provably false, to the contrary, they are substantially true, based on the DoJ's own definitions. Under the substantial truth doctrine, a statement is not actionable if its gist is true. *Emekekwue v. Offor*, 26 F.Supp.3d 348, 362 (M.D. Pa. 2014) ("Pennsylvania law provides that truth is an absolute and complete defense to a defamation claim. The burden is on the defendant to prove the truth of the defamatory communication. The defendant can meet this burden if she proves the statements to be substantially true. Pennsylvania has determined proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter").

As pleaded, the facts set forth in the Complaint make "subject" status plausible. Harvie served on the Falls Township Board of Supervisors from 2003 to 2019 and chaired it from 2008 to 2019, Compl. ¶ 25; the investigation, which dated back to 2017, reached "local government and politics, unions, contractors, political donations" in Bucks County. Compl. ¶ 30-31; and Harvie appeared "as a former Falls Township elected official alongside several other current and former Falls Township officials," Compl. ¶ 4. This is within the definition of "subject."

The Statements challenged here were uttered in overtly political communications, by political entities and actors, deliberately framed to communicate with the public about a congressional candidate's background during a general election. These Statements are true, pursuant to the DoJ's own definition of the term "subject." Plaintiffs fail to set forth even a single fact which is inconsistent with or contradicts Harvie's subject status. Instead, they argue he was not a "target," a term of art with an entirely different meaning.

Moreover, in context the Statements do not grievously harm Plaintiffs' reputation. The Statements simply do not provoke the kind of harm which has grievously fractured one's standing in the community of respectable society, especially since they were communicated in a manner in

which viewers expect to see political and campaign speech, positive, negative and even sometimes hyperbolic, about candidates and issues. *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 464–65 (1981) ("[W]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context . . . to determine the effect the [speech] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.").

The Statements were posted on a website sponsored by Defending America PAC titled www.fireharvie.com, on social media posts sponsored by Defending America PAC, and in an email from Defending America PAC to its email list. Compl. at ¶¶ 2, 48-54, 70-72. Harvie is a candidate for United States Congress, and these pages and posts overtly oppose his candidacy. Those viewing the pages and communications expect to see political speech. Importantly, Plaintiffs repeatedly concede Defendants' speech is targeted at the voters of Pennsylvania's 1st Congressional District. Compl. at ¶¶ 2, 62, 81, 84, 97, 99. The Statements were published in a political context, to inform voters during an election.

Perhaps most notably, Paragraph 67, which references the "FBI Corruption Subject" tweet, is taken out of context. Plaintiffs aver Defendant Pack "agreed with the Cease-and-Desist Letter that he made false and defamatory statements, adding that you'll need to update the number of times he called Harvie an FBI corruption subject to 28." Compl. ¶ 67. This is a mischaracterization of Defendant Pack's tweet. When viewed in its entirety, Defendant Pack is replying to a tweet from the National Republican Congressional Committee and agreeing with the content of their tweet, while "tagging" Harvie, referring to him as an FBI Corruption Subject. Plaintiffs complete mischaracterization of the tweet is a feeble attempt to present it as an admission that he made false

and defamatory statements, ***which is simply not true and a total misrepresentation of Defendant Pack's speech***.[5]

Plaintiffs also bemoan statements regarding a Bucks County employee. Plaintiffs' claims are based upon two allegations: (1) a post on Defendant's website stating: "Harvie getting a little too cozy with a county employee," and (2) statements in a third party's Facebook post which contains a picture of Harvie and the text "I'm Bobbie Harvie and I banged #SaraRisi, a Bucks County Children Children [sic] and Youth Worker while I was married. Did I help her become a supervisor?" Compl. ¶¶70–71.

These statements are indefinite, not provably false, and merely promulgated an unverified rumor rather than a factual assertion by the speaker. The Complaint does not define "cozy," nor does that term have any one single settled meaning. *See* Cozy, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/word%20on%20the%20street (last visited October 5, 2026) (defining "cozy" to include "marked by or suggesting close association or connivance", "marked by or providing contentment or comfort", "enjoying or affording warmth and ease", "marked by the intimacy of the family or a close group", "marked by a discreet and cautious attitude or procedure") As it stands, this term is indefinite and not provably false on its own terms.

Interestingly, Plaintiffs presentation of the county employee statement by Defending America PAC is markedly out of context as they cherry picked the following statement: "Harvie getting a little too cozy with a county employee." Compl. at ¶ 70. When one visits the website Plaintiffs themselves cite to for this proposition, the full statement yields a very different context. *See* Compl. at ¶ 70 n. 18. The entire statement is: "Word on the street is that it may have had

[5] *See* Tweet from Chris Pack (Jul. 2, 2026) https://x.com/ChrisPack716/status/2072715886570479957.

something to do with Harvie getting a little too cozy with a county employee." The last sentence is hyperlinked to a Facebook post by a third-party individual: https://fireharvie.com/wp-content/uploads/2026/07/DirtyBob.jpeg. When viewed in its entirety, a crudely worded Facebook screenshot introduced by "word on the street," signals unverified rumor rather than a factual assertion by the speaker. *See* Word on the Street, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/word%20on%20the%20street (last visited July 2, 2026) (Word on the street means "what people are saying.").

Here, when viewed in context, the statements concerning the county employee are evident conjecture or rumor, not defamatory in nature. *See Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("a reasonable reader would understand that any allegations . . . are nothing more than conjecture and rumor."); *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) ("A question can conceivably be defamatory, though it must be reasonably read as an *assertion* of a false *fact*; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation. The language used cannot be tortured to 'make that certain which is in fact uncertain.'").

Plaintiffs' reliance on the linked image fares no better. The statement Defendants made is "Word on the street is that it *may* have had something to do with Harvie getting a little too cozy with a county employee." Compl. ¶ 70. Every signal in that sentence tells the reader it is not a factual assertion by the speaker, it is attributed to unnamed others, hedged as to whether it occurred, and indefinite as to what occurred. The accompanying image is presented is a screenshot of a third party's social media post, reproduced in the poster's own crude phrasing, which a reader is invited to evaluate rather than accept. Nothing in the publication states that Defendants investigated the claim, credited it, or adopted it as their own. A statement so framed is "nothing more than

conjecture and rumor", *Levin*, 119 F.3d at 197, and "inquiry itself, however embarrassing or unpleasant to its subject, is not accusation," *Chapin*, 993 F.2d at 1094. The Court must read the challenged words in the context in which they appeared, *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004), and because that context conveys rumor rather than fact, the statement is not capable of defamatory meaning.

Plaintiffs' alleged harm is reputational injury pleaded in the language of the elements themselves, Compl. ¶¶ 90, 97, emotional distress and unspecified "other damages," Compl. ¶ 98, and the Committee's decision to campaign for the office Harvie is seeking, Compl. ¶ 99. The alleged harm cannot support Plaintiffs' defamation claim as Plaintiffs' pleading falls short of the "grievous harm" required to support their defamation claims.[6]

Furthermore, Plaintiffs' conclusory allegations do not establish *per se* liability. First, the "subject" statements do not impute the commission of a criminal offense. Plaintiffs own definition of "subject", Compl. ¶ 60, ***carries no implication of wrongdoing***. Paragraph 35 states "no charges have been filed, no indictments handed down, and no accusations of wrongdoing have been made . . ." Compl. ¶ 35. Paragraph 36 states "being called to testify before a grand jury does not confirm any involvement in potential crimes." Compl. ¶ 36. Likewise, the word "cozy" does not necessarily impute sexual misconduct. Even for a *per se* claim, Pennsylvania abrogated truly presumed damages, so a plaintiff must still prove general reputational harm. *See Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 245-47 (Pa. Super. Ct. 1993); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581-82 (E.D. Pa. 1999), a*ff'd sub nom. Synygy, Inc. v. Scott-Levin*, 229 F.3d 1139

[6] Plaintiffs entirely fail to allege they suffered any special harm as a result of Defendants' alleged statements. Defendants pled harm is that Harvie's "reputation" is harmed, that he is "expose[d] . . . to public contempt and ridicule", others are "discouraged . . . from associating with him," and that he may be "lowered . . . in the estimation of the community." Compl. at ¶ 90. Plaintiffs do not allege any pecuniary harm whatsoever. What "harms" they do allege do not rise to the level necessary to meet 42 Pa. C.S. § 8343(a)(6).

(3d Cir. 2000). Plaintiffs have pleaded no facts supporting reputational harm beyond the label "*per se*" itself.

Finally, Plaintiffs fail to cite to or attach any specific statement by Defendants saying that Harvie is "under FBI investigation." Compl. at ¶ 82. Instead, they merely allude to the existence of the "under FBI investigation" statements, rather than allowing this Court to place such statements, assuming they even exist, in full context as required by Pennsylvania's defamation law.

Viewed in context the Statements are incapable of defamatory meaning and so Count I must be dismissed.

**b. Defendants' statements concerned a public figure and matters of public concern and are entitled to Constitutional protection under the First Amendment.**

Even assuming the Complaint contains more than conclusory allegations, it must still be dismissed as Plaintiffs have failed to sufficiently plead actual malice. Defendants' alleged statements concerning a candidate for the United States House of Representatives during an election are the quintessential examples of speech on matters of public concern. Statements about a public figure on matters of public concern receive the highest constitutional protection. Indeed, Harvie, who has spent decades in public service, Compl. ¶ 98, and now is his party's nominee for Congress, Compl. ¶ 1, must show the statements made by Defendants were made with actual malice. *Cf Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 125 (E.D. Pa. 2020) (concluding a candidate for Congress is a public figure as a matter of law at the summary-judgment stage).

Political speech and debate is often "bruising" with people "express[ing] opinions that offend others." *McCafferty*, 955 F.3d at 355. Yet, "the First Amendment protects virtually all of those opinions, even offensive and hurtful ones, to promote a greater good: robust political discourse." *Id.* "The price of free speech is putting up with all sorts of name-calling and hurtful rhetoric." *Id.*; *cf. Snyder v. Phelps*, 562 U.S. 443, 451 (2011). "In particular, speech on matters of

public concern – as opposed to speech of only private concern – occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Tannous v. Cabrini Univ.*, 697 F. Supp.3d 350, 366 (E.D. Pa. 2023) (cleaned up).

"Determining whether speech is a matter of public concern is a legal question that requires consideration of the 'content, form, and context of a given statement.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Speech involves matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder*, 562 U.S. at 453. "[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide 'adequate "breathing space" to the freedoms protected by the First Amendment.'" *Boos v. Barry*, 485 U.S. 312, 322 (1988) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

At the pleading stage, a public figure, like Harvie, "must allege facts to support an inference of actual malice." *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (nonprecedential). "[I]f the plaintiff is a public figure he or she must prove that the defendant published the offending statement with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard of its falsity." *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. Super. 2007) (citing *Curran v. Philadelphia Newspapers, Inc.*, 439 A.2d 652, 659 (Pa. Super. 1981)); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80(1964). "Actual malice" is not analyzed using an objective standard but rather, for the purposes of establishing that a defendant acted with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Norton v. Glenn*, 860 A.2d 48, 55 (Pa. 2004) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "[E]ven an

extreme departure from professional standards, without more, will not support a finding of actual malice." *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665(1989))

"[T]he constitutional actual malice standard requires that the plaintiff establish by clear and convincing evidence the defendant's actual state of mind concerning the veracity of the alleged defamatory statement." *Moore v. Cecil*, 174 F.4th 862, 882 (11th Cir. 2026). "[B]y showing that the defendant knew the statement was false or that the defendant acted with reckless disregard to its falsity, the plaintiff necessarily shows that the defendant had an intent to defame." *Id.* (citing *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013) ("In ordinary defamation cases, intent to defame can be established solely through knowledge that the statement was false. After all, if the defendants knew that the statement made was false and defamatory, then they must have intended to defame.")).

This is the quintessential case of communications about a public figure and matters of public concern and Plaintiffs must prove actual malice. Yet Plaintiffs fail to plead with sufficient specificity to support their claim that Defendants acted with actual malice. While Defendants are politically opposed to Plaintiffs, they have not acted with actual malice or reckless disregard for the truth. It is public knowledge that Harvie was reportedly involved in a federal "investigation into local governments in suburban Philadelphia."[7] Harvie was subpoenaed to testify before a federal grand jury and was "the highest-ranking elected official known to have testified."[8] Defendants are unaware of any instance where Harvie has denied his involvement with the federal

---

[7] Arthur Delaney, *GOP Congressman Claims His Opponent Is Under FBI Investigation, but Can't Prove It*, HuffPost (July 29, 2026, 8:41 AM), https://www.huffpost.com/entry/gop-congressman-claims-his-opponent-is-under-fbi-investigation-but-cant-prove-it_n_6a68d91de4b098352c2f70e8

[8] Tom Sofield, *Exclusive: County Commissioner Harvie, Other Former & Current Falls Twp. Officials Testify Before Grand Jury*, LevittownNow.com (Sept. 13, 2022), https://levittownnow.com/2022/09/13/exclusive-county-commissioner-harvie-other-former-current-falls-twp-officials-testify-before-grand-jury/.

investigation and grand jury. Moreover, Plaintiffs' cease-and-desist letter did not mention or complain of any statement regarding the Bucks County employee. Since Defendants' speech concerned a public figure and matters of public concern, it is entitled to the highest constitutional protection. To the extent any of the alleged statements are capable of a defamatory meaning, Defendants did not act with actual malice, and the statements are substantially true. As such, Plaintiffs' definition claims should be dismissed.

**c. Plaintiffs' fail to allege Defendants made any statements regarding Bob Harvie for Congress**

Plaintiffs fail to plead facts suggesting any statement was made by Defendants regarding the Committee, which is a registered political committee pleaded as a separate plaintiff in its own right.[9] *See* Compl. at ¶ 13. Plaintiffs appear to conflate statements about Harvie with statements about the Committee, but the two parties are not interchangeable. Accordingly, even if the alleged Statements were defamatory, which they are not, Plaintiffs' defamation claims necessarily must fail as to the Committee.

**D. <u>COUNT II FAILS TO STATE A CLAIM FOR FALSE LIGHT.</u>**

Plaintiffs' false light claim is equally deficient and indeed, it fails for the same reasons. Under Pennsylvania law, false light "imposes liability on a person who publishes material that "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 375 Pa.Super. 66, 543 A.2d 1181, 1188 (1988) (en banc)). The challenged statements concern a candidate for federal office and matters of public concern, as such

---

[9] *See also* Federal Election Commission, Committee Profile, Bob Harvie for Congress https://www.fec.gov/data/committee/C00901348/?tab=about-committee.

Plaintiffs must plead knowing or reckless falsity as a constitutional matter. *Time, Inc. v. Hill*, 385 U.S. 374, 387-88 (1967).

**a. Count II fails as to Bob Harvie for Congress because a political action committee, has no personal right of privacy**

False light is a privacy tort, and the right of privacy is personal to the individual. Restatement (Second) of Torts § 652I ("The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded."). Comment c provides, "[a] corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E." *Harris by Harris v. Easton Pub. Co.*, 153, 483 A.2d 1377, 1383 (Pa. Super. 1984).

The Committee is a registered political committee, Compl. at ¶ 13, an entity with no privacy interest capable of invasion. Paragraphs 103 through 107 describe exclusively how Defendants allegedly portray Harvie. But the Complaint fails to describe any false light in which the Committee was placed. Further, the Complaint fails to identify even a single challenged statement specifically referencing the Committee. Indeed, Paragraph 84 of the Complaint concedes the Statements "expressly identify Harvie by name." Just as in the defamation context, the Complaint alleges no statement by Defendants regarding the Committee at all.

Count II must be dismissed as to the Committee with prejudice since the Committee, which is an entity, does not have a personal right of privacy.

**b. The "subject" statements do not create a false impression**

Falsity is an element, whether by direct falsehood or selective presentation. *Graboff*, 744 F.3d at 136. In the instant matter, the Complaint defeats itself. Pursuant to Paragraph 60, the DoJ Manual defines a "subject" of an investigation as "a person whose conduct is within the scope of the grand jury's investigation." JM 9-11.151. The Complaint never alleges Harvie was not a

subject. It alleges only that he was never a "target," cf. Compl. at ¶¶ 3, 33, 39, 86, and that he understood he appeared as a witness, Compl. at ¶¶ 34, 87. The Complaint's own allegations establish that Harvie chaired the Falls Township Board of Supervisors from 2008 to 2019, Compl. at ¶ 25, and that the investigation reached local government, unions, contractors, and political donations in Bucks County beginning in 2017. Compl. at ¶¶ 4, 30-31.

Ordinarily, "Defendants may raise truth as an affirmative defense and prove that their statements were true." *Wang v. Univ. of Pittsburgh*, 181 F.4th 301, 311–12 (3d Cir. 2026); *see* 42 Pa.C.S.A. § 8343(b)(1). Typically, Courts may not rule on truth at the motion to dismiss sate. *Wang*, 181 F.4th at 311. But when "a statement's truth is apparent on the complaint's face[,]" then this Court may grant a motion to dismiss based on truth. *Id.*; *see Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Instantly, the Complaint pleads facts establishing Harvie's conduct was within the scope of the investigation and as such, the challenged description created no false impression. Thus, this Court should dismiss those claims.

**c. The FBI statements fail to meet the standard of "highly offensive to a reasonable person"**

To succeed in a claim for false light, Plaintiffs must satisfy an objective standard, i.e., they must show a reasonable person would take offense to the subject matter. *See Graboff*, 744 F.3d at 136 (quoting *Larsen*, 375 Pa.Super. 66, 543 A.2d at 1188). The Complaint concedes that Harvie testified before a federal grand jury, Compl. at ¶¶ 4, 32, 87, and that this fact has been publicly reported since 2022, Compl. at ¶ 32. Describing a person by the technical term, which the Complaint defines and which carries no implication of wrongdoing, is not conduct which a reasonable person would find highly offensive.

**d. False light carries the same First Amendment protections as defamation**

The state-law elements of the tort of false light invasion of privacy are not the end of the analysis. False light also requires pleading actual malice. *See Graboff*, 744 F.3d at 136 (noting that Pennsylvania follows the Second Restatement); *see also Krajewski*, 53 A.3d at 807–08, 810. Moreover, this Court has held, that "'false light invasion of privacy claims incorporate the same First Amendment protections as claims for defamation under state law.'" *Tannous*, 702 F. Supp.3d at 321 (quoting *Taha v. Bucks Cnty.*, 2015 WL 9489586 (E.D. Pa. Dec. 30, 2015) (Restrepo, J.)).

This Court has held that "for both defamation and false light claims, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law . . ." *Id.* at 320 (quoting *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (Robreno, J.)); *see also McCafferty*, 955 F.3d at 357 (3d Cir. 2020) ("***Pure opinions cannot defame***.") (emphasis added); *U.S. Healthcare, Inc.*, 898 F.2d at 927 ("[A] statement of pure opinion receives absolute protection under the First Amendment."); Whether a statement is fact or opinion is a question of law for the Court. *Pace*, 432 F. Supp.3d at 512. The result is dispositive.

*Tannous*, where the Court first dismissed the plaintiff's defamation claim on the ground that the defendant's online commentary consisted of "matters of opinion that are subject to disagreement and do not imply the presence of undisclosed facts," is on point. *Tannous*, 702 F. Supp. 3d at 321. On reconsideration, the court held the identical conclusion required dismissal of the false light claim premised on the same publications as those statements "receive First Amendment protection and are not actionable under either defamation or false light." *Id.*

As set forth in Section III.A above, the Statements regarding Harvie as a "subject of an FBI Investigation" and the county employee are constitutionally protected expressions of opinion, rhetorical hyperbole, and/or unverified rumor. Count II therefore fails as to those statements for precisely the same reasons as Count I.

In anticipation, the Complaint pleads Defendants "create th[e] false impression by selectively publicizing portions of the publicly available facts while omitting material facts." Compl. ¶ 104. Plaintiffs presumably rely on the principle that a false light plaintiff may establish falsity by showing that a defendant "selectively printed or broadcast true statements or pictures in a manner which created a false impression." *Graboff*, 744 F.3d at 136 (quoting *Larsen*, 543 A.2d at 1189). That theory does not survive where, as here, the resulting impression is itself protected opinion. *Tannous* squarely so held.

The plaintiff in *Tannous* alleged that the defendant had "cherry-picked" among his social media posts to create a false impression, the identical theory pleaded in paragraph 104 of the Complaint. The court assumed the allegation true and dismissed anyway: "[e]ven if Defendant selectively republished the tweets to create a false impression . . . which could satisfy the "falsity" prong of a false light claim – it nonetheless remains merely an opinion about Plaintiff, even if it is promoted through selectively reprinted material." *Tannous*, 702 F. Supp.3d at 321. In other words, selective presentation may establish falsity as a matter of state tort law while leaving the publication fully protected as a matter of federal constitutional law. A plaintiff cannot convert protected opinion into liability by recharacterizing the speaker's editorial choices as omissions. *See Pace,* 432 F. Supp. 3d at 513 (where a defendant "is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (Posner, J.)).

The narrow exception to the opinion rule applies only where an opinion "could reasonably be understood to imply undisclosed defamatory facts . . ." *Id*. That exception has no place here, as established by the Complaint's own allegations.

The factual predicate for the Statements is disclosed, public, and pleaded in the Complaint itself. Where the facts underlying a characterization are disclosed to the audience or as here, are matters of public record which the audience can independently evaluate, the characterization implies no undisclosed defamatory facts and remains protected. *See Tannous v. Cabrini Univ.*, 697 F. Supp.3d 350, 365 (E.D. Pa.), *on reconsideration in part*, 702 F. Supp. 3d 317 (E.D. Pa. 2023) (finding no "implication of undisclosed facts" where the publication set out the material it was commenting upon).

The statements regarding the county employee are constitutionally protected opinion, and because false light claims "incorporate the same First Amendment protections as claims for defamation under state law'", *Tannous.*, 702 F. Supp. 3d at 321, Count II must be dismissed as it pertains to the statements regarding the county employee for the same reasons as Count I.

### E. **CLAIMS BASED ON STATEMENTS FIRST PUBLISHED BEFORE AUGUST 5, 2025, ARE TIME-BARRED.**

Pennsylvania imposes a one-year limitations period on defamation and false light invasion of privacy claims. 42 Pa. C.S. § 5523(1); *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012). The single publication rule, § 8341(b), fixes accrual at first publication. *In re Phila. Newspaper*, 690 F.3d at 174. The Complaint was filed August 5, 2026, meaning any statement first published before August 5, 2025, is time-barred. To the extent Plaintiffs seek recovery for statements first published before August 5, 2025, those claims are time-barred and should be dismissed. *Doroshin v. Drexel Univ.*, 2024 WL 4349948, at *8 (E.D. Pa. Sept. 30, 2024), *aff'd*, 2025 WL 3540059 (3d Cir. Dec. 10, 2025) (nonprecedential).

### F. **FEES SHOULD BE AWARDED UNDER PENNSYLVANIA'S ANTI-SLAPP ACT.**

Under Pennsylvania's Anti-SLAPP Act immunity is granted to "protected public expression," which includes freedom of speech "on a matter of public concern. . . guaranteed by

the First Amendment to the Constitution of the United States." 42 Pa.C.S. § 8340.13. Under the Anti-SLAPP Act, "a person is immune from civil liability for a cause of action based on protected public expression if:

> (1) The party asserting the cause of action based on protected public expression fails to:
>
> (i) establish a prima facie case as to each essential element of the cause of action; or
>
> (ii) state a cause of action upon which relief can be granted.
>
> (2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part."

*Id*. at § 8340.15.

If a party is sued based on protected public expression, and that party is immune under § 8340.15, "the court ***shall*** award the party attorney fees, court costs, and expenses of litigation . . ." 42 Pa. C.S. § 8340.18 (emphasis added). A defendant is "immune" under Pennsylvania's Anti-SLAPP Act if the plaintiff, who brought a claim based on protected public expression, fails to "state a cause of action upon which relief can be granted," fails to "establish a prima facie case as to each essential element of the cause of action," or "[t]here is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part." 42 Pa. C.S. § 8340.15. "In other words, if a claim is dismissed before trial based on any one of three standards—the federal motion to dismiss standard, the trial standard, or the summary judgment standard—the court must shift the fees and costs to the plaintiff who wrongly filed a SLAPP suit." *Lento Law Group*, 2026 WL 2100471, at *11(E.D. Pa. 2026) (citing 42 Pa. C.S. §§ 8340.15, 8340.18).

Although Pennsylvania's Anti-SLAPP Act contains a not-yet effective section creating procedures for a special motion, it is not "the only procedural mechanism through which a party

may assert his immunity." *Id*. (citing 42 Pa. C.S. § 8340.16(c)). Section 8340.16(c) "explicitly makes the immunity defense available through other motions." *Id*. For the "fee-shifting provision to apply, therefore, the Court need only find the defendant was immune under § 8340.15 and that the plaintiff failed to state a claim upon which relief can be granted." *Id*.

In *Lento Law Group*, this Court determined that the immunity and mandatory fee shifting provisions of Pennsylvania's Anti-SLAPP Act apply in federal court. *Id.* at *16. Accordingly, this Court held that a party in federal court who prevails on a motion to dismiss under Rule 12(b) is entitled to attorney's fees, court costs, and expenses of litigation under 42 Pa. C.S. § 8340.18(a)(1). *Id*. at *16.

Here, Defendants are entitled to fees under Pennsylvania's Anti-SLAPP Act. Plaintiffs commenced a cause of action based on protected public expression, Defendants' political speech. Defendants' statements are protected public expression because they discuss a public figure and matters of public concern, namely that public figure's background, qualifications, and fitness for office. Compl. at ¶ 91, 98, 110. Plaintiffs either lack standing or have failed to state a cause of action upon which relief could be granted and Defendants are immune under § 8340.15(1)(ii). As such, § 8340.18 directs that the Court "shall award" attorney fees, court costs, and expenses of litigation.

## III. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed pursuant to Rule 12(b)(1) as to Bob Harvie for Congress because it lacks Article III standing and pursuant to Rule 12(b)(6) because the Complaint fails to state a claim. Fees and costs should therefore be awarded to Defendants pursuant to Pennsylvania's Anti-SLAPP Act.

Respectfully submitted,

**BOCHETTO LENTZ & HEIM, P.C.**

Date: October 6, 2026

By: */s/ George Bochetto*
George Bochetto, Esquire
PA Bar No.: 27783
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
gbochetto@bochettoandlentz.com
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**LEX POLITICA**
Dennis W. Polio, Esquire
D.C. Bar No.: 198054
611 Pennsylvania Ave. SE, #353
Washington, DC 20003
(540) 268-2806
dpolio@lexpolitica.com
*Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*
Admitted *Pro Hac Vice*