**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE, *et al.*,**<br>*Plaintiffs*,<br>v.<br>**DEFENDING AMERICA PAC, INC., *et al.***<br>*Defendants*. | **CIVIL ACTION**<br>**No.: 2:26-cv-05544** |

**ORDER**

**AND NOW**, on this ________ day of _____________, 2026, upon consideration of Defendants' Motion to Dismiss the Amended Complaint and Application for Attorneys' Fees and Costs Pursuant to 42 PA C.S. § 8340.18, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1. Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Complaint is **DISMISSED** *with prejudice*;
2. Defendants' application for attorneys' fees and costs is **GRANTED**;
3. Defendants shall file a Statement of Fees and Costs within fourteen (14) days of this Order, and Plaintiffs shall pay the amount set forth therein, within fourteen (14) days of the filing of that Statement.

**BY THE COURT:**

____________________________
**J.**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE,** *Plaintiff,* v. **DEFENDING AMERICA PAC, INC., *et al.*** *Defendants.* | **CIVIL ACTION** **No.: 2:26-cv-05544** |

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) & APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

**AND NOW** comes Defendants Defending America PAC, Inc. and Chris Pack (collectively, "Defendants"), by and through the undersigned counsel, Bochetto Lentz & Heim, P.C. ("BLH") and Lex Politica, hereby submit Defendants' Motion to Dismiss the Amended Complaint filed by Plaintiff Bob Harvie ("Harvie" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims for defamation and false light invasion of privacy. Defendants hereby apply for fees and costs under Pennsylvania's Uniform Public Expression Protection Act, 42 Pa. C.S. § 8340.18 ("Anti-SLAPP Act") against both Harvie and Bob Harvie for Congress (the "Committee"), which was a party to the initial Complaint but acquiesced to Defendants' first Motion to Dismiss and Anti-SLAPP Act Application and has removed itself from this suit. As set forth more fully in the accompanying Memorandum of Law in support hereof, which Defendants incorporate by reference as though set forth in its entirety herein, the Motion to Dismiss should be granted, Harvie's Amended Complaint should be dismissed, *with prejudice*, and fees and costs should be awarded.

**WHEREFORE**, Defendants Defending America PAC, Inc. and Chris Pack respectfully request this Honorable Court grant this Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) and Application for Attorneys' Fees and Costs Pursuant to 42 Pa. C.S. § 8340.18 against both Plaintiff Bob Harvie and Bob Harvie for Congress and dismiss the Amended Complaint *with prejudice*.

Defendants further request this Honorable Court grant all costs and fees associated with this litigation, along with any other such relief which this Court deems to be in the interest of justice.

Respectfully submitted,

**BOCHETTO LENTZ & HEIM, P.C.**

Date: November 2, 2026

By: */s/ George Bochetto*

George Bochetto, Esquire
PA Bar No.: 27783
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
gbochetto@bochettoandlentz.com
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**LEX POLITICA**
Dennis W. Polio, Esquire
D.C. Bar No.: 198054
611 Pennsylvania Ave. SE, #353
Washington, DC 20003
(540) 268-2806
dpolio@lexpolitica.com
*Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*
Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, George Bochetto, Esquire, hereby certify that on this 2nd day of November 2026, I caused the foregoing Motion to Dismiss and accompanying Memorandum of Law to be served on counsel for all parties that have appeared via the Court's ECF filing system.

Date: November 2, 2026

*/s/ George Bochetto*
George Bochetto, Esquire
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE,**<br><br>*Plaintiff,*<br><br>v.<br><br>**DEFENDING AMERICA PAC, INC., *et al.***<br><br>*Defendants.* | **CIVIL ACTION**<br><br>**No.: 2:26-cv-05544** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6) AND APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 PA C.S. § 8340.18**

# TABLE OF CONTENTS

***Page(s)***

I. INTRODUCTION ....... 1

II. LEGAL ARGUMENT ....... 2

A. LEGAL STANDARD ....... 2

B. COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION ....... 2

a. The challenged statements are not capable of defamatory meaning ....... 3

b. Defendants statements concerned a public figure and matters of public concern are entitled to Constitutional protection under the First Amendment ....... 11

C. COUNT I FAILS TO STATE A CLAIM FOR FALSE LIGHT ....... 14

a. The “subject” statements do not create a false impression ....... 14

c. The FBI statements fail to meet the standard of “highly offensive to a reasonable person” ....... 15

d. False light carries the same First Amendment protections as defamation ....... 16

D. CLAIMS BASED ON STATEMENTS FIRST PUBLISHED BEFORE AUGUST 5, 2025, ARE TIME-BARRED ....... 18

E. FEES AND COSTS MUST BE AWARDED AGAINST BOTH HARVIE AND THE COMMITTEE UNDER PENNSYLVANIA’S ANTI-SLAPP ACT ....... 18

III. CONCLUSION ....... 24

# TABLE OF AUTHORITIES

***Page(s)***

***Cases***

*Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*,
923 A.2d 389 (Pa. 2007) .......... 13

*Bethel v. Jendoco Constr. Corp.*,
570 F.2d 1168 (3d Cir. 1978) .......... 15

*Beverly Enters., Inc. v. Trump*,
182 F.3d 183 (3d Cir. 1999) .......... 4

*Boos v. Barry*,
485 U.S. 312 (1988) .......... 12

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) .......... 9, 10

*Connick v. Myers*,
461 U.S. 138 (1983) .......... 12

*Constitution Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) .......... 2

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) .......... 23

*Doroshin v. Drexel Univ.*,
2024 WL 4349948 (E.D. Pa. Sept. 30, 2024) .......... 18

*Emekekwue v. Offor*,
26 F. Supp. 3d 348 (M.D. Pa. 2014) .......... 7

*Evancho v. Fisher*,
423 F.3d 347 (3d Cir. 2005) .......... 2

*Gibney v. Fitzgibbon*,
547 F. App'x 111 (3d Cir. 2013) .......... 4

*Graboff v. Colleran Firm*,
744 F.3d 128 (3d Cir. 2014) .......... 14, 15, 16, 17

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,

491 U.S. 657 (1989)........................................................................................ 6

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993)........................................................................... 5, 17

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988)........................................................................................ 12

*In re Phila. Newspapers*,
690 F.3d 161 (3d Cir. 2012)........................................................................... 18

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012)........................................................................... 2

*Joseph v. Scranton Times L.P.*,
959 A.2d 322 (Pa. Super. Ct. 2008)................................................................ 4

*Kendall v. Daily News Pub. Co.*,
716 F.3d 82 (3d Cir. 2013)............................................................................. 13

*Koch v. Goldway*,
817 F.2d 507 (9th Cir. 1987)........................................................................... 5

*Krajewski v. Gusoff*,
53 A.3d 793 (Pa. Super. Ct. 2012)............................................................... 4, 16

*Kryeski v. Schott Glass Techs., Inc.*,
626 A.2d 595 (Pa. Super. Ct. 1993)................................................................ 4

*Larsen v. Phila. Newspapers, Inc.*,
375 Pa.Super. 66, 543 A.2d 1181 (1988) (en banc)..................................... 14, 15

*Lento Law Group PC v. Estrada*,
2026 WL 2100471 (E.D. Pa. July 21, 2026)..................................... 3, 4, 20, 21, 23

*Levin v. McPhee*,
119 F.3d 189 (2d Cir. 1997)......................................................................... 9, 10

*Lisenby v. Olympus Corp. of the Americas*,
185 F.4th 384 (3d Cir. 2026)........................................................................... 2

*Lynch v. New Jersey Educ. Ass'n*,
735 A.2d 1129 (N.J. 1999).............................................................................. 6

*Maier v. Maretti*,
671 A.2d 701 (Pa. Super. Ct. 1995)................................................................ 4

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) .......... 2, 5, 6, 12, 13, 16

*Monge v. Univ. of Pennsylvania*,
674 F. Supp. 3d 195 (E.D. Pa. 2023) .......... 3, 4

*Moore v. Cecil*,
174 F.4th 862 (11th Cir. 2026) .......... 13

*Moore v. Cobb-Nettleton*,
889 A.2d 1262 (Pa. Super. Ct. 2005) .......... 5

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2010) .......... 16

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 13

*Norton v. Glenn*,
860 A.2d 48 (Pa. 2004) .......... 13

*Nothstein v. USA Cycling*,
499 F. Supp. 3d 101 (E.D. Pa. 2020) .......... 12

*Ollman v. Evans*,
750 F.2d 970 (D.C. Cir. 1984) .......... 5, 6

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020) .......... 3, 4, 5, 16, 17

*Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) .......... 2

*Redco Corp. v. CBS, Inc.*,
758 F.2d 970 (3d Cir. 1985) .......... 3

*Salaam v. Trump*,
777 F. Supp. 3d 414 (E.D. Pa. 2025) .......... 3

*Sarkees v. Warner-W. Corp.*,
37 A.2d 544 (Pa. 1944) .......... 4

*Sherwood v. Kerry*,
2006 WL 2228868 (E.D. Pa. Aug. 3, 2006) .......... 6

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........ 12

*Synygy, Inc. v. Scott-Levin, Inc.*,
51 F. Supp. 2d 570 (E.D. Pa. 1999) ........ 11

*Taha v. Bucks Cnty.*,
2015 WL 9489586 (E.D. Pa. Dec. 30, 2015) ........ 16

*Tannous v. Cabrini Univ.*,
697 F. Supp. 3d 350 (E.D. Pa. 2023) ........ 5, 12, 18

*Tannous v. Cabrini Univ.*,
702 F. Supp. 3d 317 (E.D. Pa. 2023) ........ 16, 17, 18

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
497 Pa. 460 (1981) ........ 8

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) ........ 14

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ........ 13

*Tucker v. Philadelphia Daily News*,
848 A.2d 113 (Pa. 2004) ........ 4, 10

*U.S. Healthcare v. Blue Cross of Greater Phila.*,
898 F.2d 914 (3d Cir. 1990) ........ 3, 5, 16

*Walker v. Grand Cent. Sanitation, Inc.*,
634 A.2d 237 (Pa. Super. Ct. 1993) ........ 11

*Wang v. Univ. of Pittsburgh*,
181 F.4th 301 (3d Cir. 2026) ........ 15

***Statutes***

42 Pa. C.S.A. § 5523(1) ........ 18

42 Pa. C.S.A. § 8320.1 ........ 24

42 Pa. C.S.A. §§ 8340.11-8340.18 ........ 1, 19

42 Pa. C.S.A. § 8340.12(3) ........ 19

42 Pa. C.S.A. § 8340.12(4) ........ 19, 23

42 Pa. C.S.A. § 8340.13 ........ 19, 21

42 Pa. C.S.A. § 8340.14(b) ........ 19

42 Pa. C.S.A. § 8340.15 ........ 19, 20, 21, 22, 24

42 Pa. C.S.A. § 8340.16(c) ........ 20

42 Pa. C.S.A. § 8340.16(f) ........ 21

42 Pa. C.S.A. § 8340.18 ........ 20, 21, 22

42 Pa. C.S.A. § 8340.18(a)(1) ........ 19, 20, 21, 24

42 Pa. C.S.A. § 8340.18(a)(2) ........ 19, 21, 22, 23, 24

42 Pa. C.S.A. § 8341(b) ........ 18

42 Pa. C.S.A. § 8343(a) ........ 3

42 Pa. C.S.A. § 8343(a)(6) ........ 10

42 Pa. C.S.A. § 8343(b) ........ 3

42 Pa. C.S.A. § 8343(b)(1) ........ 15

***Court Rules***

Fed. R. Civ. P. 12(b)(6) ........ 1, 2, 24
Fed. R. Civ. P. 15(a)(1)(B) ........ 22
Fed. R. Civ. P. 21 ........ 23
Fed. R. Civ. P. 41(a)(1)(A)(i) ........ 23
Fed. R. Civ. P. 54(d)(2) ........ 24
Pa.R.C.P. No. 230 ........ 21, 23

***Other***

Arthur Delaney, *GOP Congressman Claims His Opponent Is Under FBI Investigation, but Can't Prove It*, HuffPost (July 29, 2026) ........ 13

*Cozy*, Merriam-Webster Online Dictionary ........ 8

Tom Sofield, *Exclusive: County Commissioner Harvie, Other Former & Current Falls Twp. Officials Testify Before Grand Jury*, LevittownNow.com (Sept. 13, 2022)................................ 14

U.S. Dep't of Justice, Justice Manual § 9-11.151 (2020) .................................................. 6, 7, 15

*Word on the Street*, Merriam-Webster Online Dictionary............................................................ 9

# I. INTRODUCTION

Through this action Plaintiff Bob Harvie ("Harvie" or "Plaintiff") engages in blatant lawfare for the sole purpose of silencing his political opponents during a contentious campaign for United States House of Representatives in Pennsylvania's 1st Congressional District. Plaintiff seeks to have this Court serve as the arbiter of the qualifications of a candidate for the United States House of Representatives. Defendants Defending America PAC, Inc. and Chris Pack (collectively, the "Defendants") have done nothing more than exercise their First Amendment right to criticize Harvie's candidacy in the regular course of political engagement during an election. In turn, Plaintiff, and formerly his campaign committee Bob Harvie for Congress (the "Committee"), has chosen to weaponize the legal system by bringing this frivolous and prototypical example of a Strategic Lawsuit Against Public Participation (SLAPP), for which our legislature has made sanctions available to Defendants.

Contrary to Plaintiff's averments, this is not an attempt to damage Harvie's reputation in his community. Defendants are campaigning in the race for United States Congress, providing relevant and timely information regarding Harvie's background to the electorate. Harvie is using this litigation, and the resources of this Court, in a blatant attempt to conceal his past from the electorate.

As public figures, congressional candidates are subject to significant and intense scrutiny, including their background, history, and interactions with law enforcement and the legal system. The Eastern District is not a playground for insulted parties with thin skin to restrict free speech, and this Court should decline the invitation to do so.

Accordingly, and as set forth more fully below, Plaintiff's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) and fees and costs should be awarded under 42 Pa. C.S. §§ 8340.11-8340.18 (the "Anti-SLAPP Act") against both Harvie and the Committee.

## II. LEGAL ARGUMENT

### A. LEGAL STANDARD.

The standard for granting a motion to dismiss under Rule 12(b)(6) is well trod. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Lisenby v. Olympus Corp. of the Americas*, 185 F.4th 384, 390 n.6 (3d Cir. 2026) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (citations omitted). A court, therefore, cannot "assume that the [plaintiff] can prove facts that it has not alleged" or accept as true "unsupported conclusions and unwarranted inferences." *Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263, n.13 (3d Cir. 1998).

Further, a facial attack "contests the sufficiency of the pleadings," and the Court applies "the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6) . . ." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). That means conclusory assertions of injury are insufficient. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243–44 (3d Cir. 2012).

### B. COUNT I FAILS TO STATE A CLAIM FOR DEFAMATION.

"[F]undamentally, [defamation] is a state cause of action." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (citation omitted). Pennsylvania law requires Plaintiff to plead seven elements:

> (1) that the statement was defamatory; (2) that [Defendants] published it; (3) that the statement was about [Plaintiff] (4) that readers would understand the statement as defamatory; (5) that readers would understand that the defamatory statement was about

> [Plaintiff]; (6) that the publication harmed [him]; and (7) that [Defendants] lacked a "conditional[ ] privilege[ ]" to make that statement.

*Id.*; *see* 42 Pa. C.S. § 8343(a), *Salaam v. Trump*, 777 F. Supp. 3d 414, 423–24 (E.D. Pa. 2025).

Where a plaintiff meets his burden, it "shifts to the defendants to prove the truth of the defamatory statement, the privileged nature of the communication, or that the subject matter of the defamatory statement is a matter of public concern." *Monge v. Univ. of Pennsylvania*, 674 F. Supp. 3d 195, 205 (E.D. Pa. 2023) (citing 42 Pa. C.S. § 8343(b)).

**a. The challenged statements are not capable of defamatory meaning.**

"When evaluating a defamation claim, 'it is for the court to determine, in the first instance, whether the statement of which the plaintiff complain[s] is capable of a defamatory meaning.'" *Salaam*, 777 F. Supp. 3d at 424 (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990)).

When the statement is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). Expressions of opinion are only capable of defamatory meaning if they can "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Lento Law Group PC v. Estrada*, 2026 WL 2100471, at *6 (E.D. Pa. July 21, 2026). This is because, "when the opinion-holder discloses the factual basis for the idea," a listener can evaluate the soundness of an opinion, making the opinion incapable of defamatory meaning. *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985).

In determining whether a communication is capable of defamatory meaning, courts will apply a two part test: "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in

character." *Monge*, 674 F. Supp. 3d 195, 205–06 (citation omitted). "The court must evaluate the statements in context because context may make the plaintiff's interpretation unreasonable even where a statement appears defamatory in isolation." *Lento Law Group* , 2026 WL 2100471, at *6 (citing *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004)). Where plaintiffs rely on implication rather than the natural meaning of words themselves, they cannot use "innuendo . . . to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (nonprecedential) (internal quotation marks omitted) (quoting *Sarkees v. Warner-W. Corp.*, 37 A.2d 544, 546 (Pa. 1944)). Further, plaintiffs cannot prevail based on statements which are "merely annoying or embarrassing," mere obscenities or insults, "rhetorical hyperbole," or "vigorous epithet[s]." *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999) (quoting *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 601 (Pa. Super. Ct. 1993)).

To be defamatory, a statement of fact must be "provably false" and grievously harm reputation, not just embarrass or annoy. *Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa. Super. Ct. 2012) (explaining non-provably false opinions on matters of public concern are fully protected under the Constitution). Meaning it "could reasonably be understood to imply undisclosed defamatory facts." *Pace*, 432 F. Supp. 3d at 512.

A communication is defamatory in character if it tends to "blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession," *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citations omitted), or if it tends to "lower him in the estimation of the community or . . . deter third persons from associating or dealing with him," *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995). This is a high bar.

Importantly, "[p]ure opinions cannot defame." *McCafferty*, 955 F.3d at 357; *see U.S. Healthcare*, 898 F.2d at 927 n.13 ("[A] statement of ***pure opinion receives absolute protection under the First Amendment***." (emphasis added)); *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005). If the defendant is "expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Pace*, 432 F. Supp. 3d at 513 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (Posner, J.)). "The use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are discouraged, but such comments are not actionable." *Tannous v. Cabrini Univ.*, 697 F. Supp. 3d 350, 364 (E.D. Pa. 2023).

Here, the statements made by Defendants are not defamatory. Harvie complains of two types of statements, those calling Harvie a "FBI corruption subject," the "subject of an FBI investigation," or a "criminal subject," Am. Compl. ¶ 2, and those concerning a county employee, Am. Compl. ¶¶ 5, 87-90.[1] Neither class of statements are capable of defamatory meaning when viewed in complete context, rather than in the cherry-picked nature of the Amended Complaint.

Plaintiff fails to sufficiently allege the statements are capable of a defamatory meaning. The statements are matters of opinion or rhetorical hyperbole about a public figure and political opponent. *See Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (Kennedy, J.) ("[W]hen the surrounding circumstances of a statement are those of a heated political debate," certain remarks are commonly considered statements of opinion "where [they] are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters"). This context matters,

[1] Harvie's Amended Complaint has abandoned almost all of the allegations that Defendants referred to him as "under FBI investigation." *Compare* Compl. ¶¶ 2, 82, *with* Am. Compl.; *but see* Am. Compl. ¶ 73. Notably, Harvie fails to cite to or attach any specific statement by Defendants saying that Harvie is "under FBI investigation." Am. Compl. ¶ 73. Instead, he merely alludes to the existence of "under FBI investigation" statements once in an indeterminable context. *Id*. Such vague and cursory factual allegations do not provide enough context to survive a motion to dismiss.

as statements made in the heat of an election are more likely to be read by the reasonable audience as opinion or rhetorical hyperbole rather than as assertions of verifiable fact. *Ollman v. Evans*, 750 F.2d 970, 983–84 (D.C. Cir. 1984) (en banc). In the "highly charged atmosphere," of a federal political campaign "many cruel and damaging things [are] said about various candidates for major political offices." *Id*. at 1005 (Bork, J., concurring); *see McCafferty*, 955 F.3d at 357–58 (holding that characterizations in an article about a teenage Trump supporter were non-actionable opinion and emphasizing that "political discourse" is where the reasonable reader most expects opinion and loose language); *Sherwood v. Kerry*, 2006 WL 2228868, at *1–2 (E.D. Pa. Aug. 3, 2006) (under Pennsylvania law calling a documentary filmmaker a "Bush hack" and "disgraced former journalist" during a presidential campaign was protected opinion "viewed in the context of a hard-fought political campaign"); *Lynch v. New Jersey Educ. Assn*, 735 A.2d 1129, 1139–1140 (N.J. 1999) (calling a political opponent a "boss of bosses" with organized crime ties in a campaign advertisement was not defamatory as it would be understood by people of ordinary intelligence to be hyperbole and name-calling emanating from a political campaign).

Candidates entering the political arena "'must expect that the debate will sometimes be rough and personal.'" *Harte-Hanks Commc'ns, Inc. v. Connaug*hton, 491 U.S. 657, 687 (1989) (quoting *Ollman*, 750 F.2d at 1002 (Bork, J., concurring)). Here, every statement cited by Plaintiff came from a political organization or its president, in the context of a contested congressional election. The reasonable reader understands the statements to be opinion or rhetorical hyperbole common in political campaigns.

Further, Plaintiff fails to sufficiently allege the statements are provably false. Mere recitation of the standard is insufficient, and Plaintiff offers no facts or analysis of how these statements are provably false. Interestingly, Section 9-11.151 of the United States Department of

Justice's Manual, Am. Compl. ¶ 60, offers a definition for "subject" of an investigation. The Manual states "a subject of an investigation is a person whose conduct is within the scope of the grand jury's investigation." *See* DOJ, Justice Manual § 9-11.151 (2020).[2] Subjects of an investigation include witnesses. *See Id.* The Amended Complaint does not argue witnesses are not "subjects" under the Justice Manual's definition. Instead, Harvie attempts to falsely reframe Defendants' speech as implying he was a "target" of the federal investigation, but the term "target" has its own distinct definition in the exact same section of the Justice Manual. *See Id.* The DoJ's definition of the word "subject" fits Harvie's involvement in the federal investigation[3] as, at the very least, a subpoenaed witness.

The statements regarding Harvie's interactions with law enforcement are not provably false, to the contrary, they are substantially true, based on the DoJ's own definitions ***and Harvie's own averments in the Amended Complaint***.[4] Under the substantial truth doctrine, a statement is not actionable if its gist is true. *Emekekwue v. Offor*, 26 F.Supp.3d 348, 362 (M.D. Pa. 2014) ("Pennsylvania law provides that truth is an absolute and complete defense to a defamation claim. The burden is on the defendant to prove the truth of the defamatory communication. The defendant can meet this burden if she proves the statements to be substantially true. Pennsylvania has determined proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter"). Plaintiff fails to set forth even a single fact which is inconsistent with or contradicts

---

[2]*Available at* https://www.justice.gov/jm/jm-9-11000-grand-jury.

[3] It is also worth noting that the term "investigation" is not defined by the DoJ's justice manual, further highlighting the fact that Defendants' alleged statements are not provably false.

[4] Indeed, Harvie's own allegations in the Amended Complaint make "subject" status plausible. Harvie served on the Falls Township Board of Supervisors from 2003 to 2019 and chaired it from 2008 to 2019 and was elected to the Board of Commissioners of Bucks County in 2019. Am. Compl. ¶¶ 24–25. The investigation, which dated back to 2017, reached "local government and politics, unions, contractors, political donations" in Bucks County. Am. Compl. ¶¶ 29–30; and Harvie appeared be for the Grand Jury "as a former Falls Township elected official." Am. Compl. ¶ 4. This is within the definition of "subject."

Harvie's subject status. Instead, he argues he was not a "target," a term of art with an entirely different meaning.

Moreover, in context, the statements do not grievously harm Plaintiff's reputation especially since they were communicated in a forum where viewers expect to see political and campaign speech. *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460, 464–65 (1981) ("[W]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context . . . to determine the effect the [speech] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." (citations modified)).

Instantly, theses posts were made on pages and posts overtly opposing Harvie's candidacy for United States Congress.[5] Those viewing the pages and communications expect to see political speech. Importantly, Plaintiff repeatedly concede Defendants' speech is targeted at the voters of Pennsylvania's 1st Congressional District. Am. Compl. ¶¶ 2, 11, 75, 76, 101, 102, 107, 115, 126.

Harvie also laments the statements regarding a Bucks County employee. Specifically, Harvie's claims are arise from the sharing of statements in a third party's Facebook post and a statement by Defending America PAC referring to Harvie as "getting cozy with a county employee" or "getting a little too cozy with a county employee." Am. Compl. ¶¶ 87–90. The third-party Facebook post contains a picture of Harvie and the text "I'm Bobbie Harvie and I banged #SaraRisi, a Bucks County Children Children [sic] and Youth Worker while I was married. Did I help her become a supervisor?" Am. Compl. ¶ 88.

---

[5] The statements were posted on websites sponsored by Defending America PAC titled "www.fireharvie.com" and "fbicorruptionsubjectbobharvie.com," on social media posts sponsored by Defending America PAC, and in an email from Defending America PAC to its email list. Am. Compl. ¶¶ 2, 61–63, 65–74, 87–90. Many of these sources bear a clear disclaimer that the communications are paid for by Defending America PAC. *See, e.g.,* Am. Compl. ¶¶ 62, 67.

These statements are indefinite, not provably false, and merely promulgate an unverified rumor. The Amended Complaint does not define "cozy," nor does that term have any one single settled meaning. *See* Cozy, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/cozy (last visited Oct. 29, 2026) (defining "cozy" to include "marked by or suggesting close association or connivance", "marked by or providing contentment or comfort", "enjoying or affording warmth and ease", "marked by the intimacy of the family or a close group", "marked by a discreet and cautious attitude or procedure"). As it stands, this term is indefinite and not provably false on its own terms.

Interestingly, Plaintiff's presentation of the county employee statement by Defending America PAC is markedly out of context as he cherry picked the following statement: "Harvie getting a little too cozy with a county employee." Am. Compl. ¶ 89. The website cited by Harvie for this proposition contains the full statement, which yields a very different context. *See* Am. Compl. ¶ 82 n.27. The entire statement is: "Word on the street is that it may have had something to do with Harvie getting a little too cozy with a county employee." The last sentence is hyperlinked to a Facebook post by a third-party individual: https://fireharvie.com/wp-content/uploads/2026/07/DirtyBob.jpeg. When viewed in its entirety, a crudely worded Facebook screenshot introduced by "word on the street," signals unverified rumor rather than a factual assertion by the speaker. *See* Word on the Street, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/word%20on%20the%20street (last visited October 29, 2026) (Word on the street means "what people are saying.").

Here, when viewed in context, the statements concerning the county employee are evident conjecture or rumor, not defamatory in nature. *See Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("a reasonable reader would understand that any allegations . . . are nothing more than

conjecture and rumor."); *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) ("A question can conceivably be defamatory, though it must be reasonably read as an *assertion* of a false *fact*; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation. The language used cannot be tortured to 'make that certain which is in fact uncertain.'"). This is especially true given that the statements were published in the overt and obvious context of a heated political campaign. *See supra* Section II.B.b.

Plaintiff's reliance on the linked image fares no better. The statement Defendants made is "Word on the street is that it *may* have had something to do with Harvie getting a little too cozy with a county employee." Am. Compl. ¶ 82 n.27. Each signal the sentence tells the reader it is not a factual assertion by the speaker, it is attributed to unnamed others, hedged as to whether it occurred, and indefinite as to what occurred. The accompanying "screenshot" is of a third party's social media post, reproduced in the poster's own crude phrasing, which a reader is invited to evaluate rather than accept. Nothing in the publication states that Defendants investigated the claim, credited it, or adopted it as their own. A statement so framed is "nothing more than conjecture and rumor", *Levin*, 119 F.3d at 197, and "inquiry itself, however embarrassing or unpleasant to its subject, is not accusation," *Chapin*, 993 F.2d at 1094. The Court must read the challenged words in context, *Tucker*, 848 A.2d at 124, and that context conveys rumor rather than fact, thus the statement is not capable of defamatory meaning.[6]

Plaintiff's alleged harm is reputational injury pleaded in the language of the elements themselves, Am. Compl. ¶¶ 108, 115, 126, and emotional distress and unspecified "other

---

[6] In the event the Court does not determine the statements regarding the Bucks County Employee are conjecture and rumor, Defendants argue in the alternative that the statements are true.

damages," Amended Compl. ¶¶ 116, 127. The alleged harm, especially contextualized by a heated political campaign, falls short of alleging "grievous harm" needed to support defamation claims.[7]

Furthermore, Plaintiff's conclusory allegations do not establish *per se* liability. First, the "subject" statements do not impute the commission of a criminal offense. Plaintiff's own definition of "subject", Am. Compl. ¶ 60, ***carries no implication of wrongdoing***. Paragraph 34 states "no charges have been filed, no indictments handed down, and no accusations of wrongdoing have been made . . ." Am. Compl. ¶ 34. Paragraph 35 states "[b]eing called to testify before a grand jury does not confirm any involvement in potential crimes." Am. Compl. ¶ 35. Likewise, the word "cozy" does not necessarily impute sexual misconduct. *See supra*. Even for a *per se* claim, Pennsylvania abrogated truly presumed damages, so a plaintiff must still prove general reputational harm. *See Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 245-47 (Pa. Super. Ct. 1993); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581-82 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000). Plaintiffs have pleaded no facts supporting reputational harm beyond the label "*per se*" itself.

Finally, Plaintiff fails to cite to or attach any specific statement by Defendants saying that Harvie is "under FBI investigation." Am. Compl. ¶ 73. Instead, he merely alludes to the existence of the "under FBI investigation" statements, rather than allowing this Court to place such statements, assuming they even exist, in full context as required by Pennsylvania's defamation law.

Viewed in context the Statements are incapable of defamatory meaning and so Count I must be dismissed.

---

[7] Harvie entirely fails to allege he suffered any special harm as a result of Defendants' alleged statements. Harvie's pled harm is that his "reputation" is harmed, that he is "expose[d] . . . to public contempt and ridicule", others are "discouraged . . . from associating with him," and that he may be "lowered . . . in the estimation of the community." Am. Compl. ¶ 108. Harvie does not allege any pecuniary harm whatsoever. What "harms" he does allege do not rise to the level necessary to meet 42 Pa. C.S. § 8343(a)(6).

**b. Defendants' statements concerned a public figure and matters of public concern and are entitled to Constitutional protection under the First Amendment.**

Even assuming the Amended Complaint contains more than conclusory allegations and assuming the statements are capable of defamatory meaning—they are not—the Amended Complaint must still be dismissed as Harvie has failed to sufficiently plead actual malice. Defendants' alleged statements concerning a candidate for the United States House of Representatives during an election are the quintessential examples of speech on matters of public concern. Statements about a public figure on matters of public concern receive the highest constitutional protection. Indeed, Harvie, who has spent decades in public service, Am. Compl. ¶ 116, and now is his party's nominee for Congress, Am. Compl. ¶ 1, must show the statements made by Defendants were made with actual malice. *Cf. Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 125 (E.D. Pa. 2020) (a candidate for Congress is a public figure as a matter of law at the summary-judgment stage).

Political speech and debate is often "bruising" with people "express[ing] opinions that offend others." *McCafferty*, 955 F.3d at 355. Yet, "the First Amendment protects virtually all of those opinions, even offensive and hurtful ones, to promote a greater good: robust political discourse." *Id.* "The price of free speech is putting up with all sorts of name-calling and hurtful rhetoric." *Id.*; *cf. Snyder v. Phelps*, 562 U.S. 443, 451 (2011). "In particular, speech on matters of public concern . . . occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Tannous*, 697 F. Supp. 3d at 366 (cleaned up).

"Determining whether speech is a matter of public concern is a legal question that requires consideration of the 'content, form, and context of a given statement.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Speech involves matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community,

or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder*, 562 U.S. at 453. "[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide 'adequate "breathing space" to the freedoms protected by the First Amendment.'" *Boos v. Barry*, 485 U.S. 312, 322 (1988) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

At the pleading stage, a public figure, like Harvie, must plead that Defendants acted with actual malice. *McCafferty*, 955 F.3d at 359; *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007). "'Actual malice' is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher either know that its article was false or publish it with 'reckless disregard' for its truth." *McCafferty*, 955 F.3d at 359; *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). "Actual malice" is not an objective standard but rather, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Norton v. Glenn*, 860 A.2d 48, 55 (Pa. 2004). "[E]ven an extreme departure from professional standards, without more, will not support a finding of actual malice." *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.).

"[T]he constitutional actual malice standard requires that the plaintiff establish by clear and convincing evidence the defendant's actual state of mind concerning the veracity of the alleged defamatory statement." *Moore v. Cecil*, 174 F.4th 862, 882 (11th Cir. 2026). "[B]y showing that the defendant knew the statement was false or that the defendant acted with reckless disregard to its falsity, the plaintiff necessarily shows that the defendant had an intent to defame." *Id.* (citing *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013)).

This is the quintessential case of communications about a public figure and matters of public concern, as such Plaintiffs must prove actual malice. Yet Plaintiff fails to plead with

sufficient specificity to support their claim that Defendants acted with actual malice. While Defendants are politically opposed to Harvie, they have not acted with actual malice or reckless disregard for the truth. It is public knowledge that Harvie was reportedly involved in a federal "investigation into local governments in suburban Philadelphia."[8] Harvie was "the highest-ranking elected official" subpoenaed to testify before the Grand Jury.[9] Defendants are unaware of any instance where Harvie has denied his involvement with the federal investigation and grand jury. Plaintiff's cease-and-desist letter did not mention or complain of any statement regarding the Bucks County employee—nor, based on information and belief, has Harvie ever sent a cease-and-desist letter to Defendants concerning statements about the Bucks County employee.

Since Defendants' speech concerned a public figure and matters of public concern, it is entitled to the highest constitutional protection. To the extent any of the alleged statements are capable of a defamatory meaning, Defendants did not act with actual malice, and the statements are substantially true. As such, Plaintiff's defamation claims should be dismissed.

### C. COUNT II FAILS TO STATE A CLAIM FOR FALSE LIGHT.

Harvie's false light claim is equally deficient and fails for the same reasons as his Defamation claim. Under Pennsylvania law, false light "imposes liability on a person who publishes material that "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc)). The challenged statements concern a candidate for federal office and matters

---

[8] Arthur Delaney, *GOP Congressman Claims His Opponent Is Under FBI Investigation, but Can't Prove It*, HuffPost (July 29, 2026, 8:41 AM), https://www.huffpost.com/entry/gop-congressman-claims-his-opponent-is-under-fbi-investigation-but-cant-prove-it_n_6a68d91de4b098352c2f70e8

[9] Tom Sofield, *Exclusive: County Commissioner Harvie, Other Former & Current Falls Twp. Officials Testify Before Grand Jury*, LevittownNow.com (Sept. 13, 2022), https://perma.cc/7RWX-RFG2.

of public concern, as such Plaintiff must plead knowing or reckless falsity as a constitutional matter. *Time, Inc. v. Hill*, 385 U.S. 374, 387–88 (1967).

**a. The "subject" statements do not create a false impression.**

Falsity is an element, whether by direct falsehood or selective presentation. *Graboff*, 744 F.3d at 136. In the instant matter, the Amended Complaint, like the Complaint before it, defeats itself. Pursuant to Paragraph 60, the Justice Manual defines a "subject" of an investigation as "a person whose conduct is within the scope of the grand jury's investigation." Justice Manual § 9-11.151. Even after amendment, the Amended Complaint never alleges Harvie was not a subject. It alleges only that he was never a "target," *cf.* Am. Compl. ¶ 46, and that he understood he appeared as a witness, Am. Compl. ¶¶ 45, 48. The Amended Complaint's own allegations establish that Harvie chaired the Falls Township Board of Supervisors from 2008 to 2019, Am. Compl. ¶ 25, and that the investigation reached local government, unions, contractors, and political donations in Bucks County beginning in 2017. Am. Compl. ¶¶ 4, 29–30.

Ordinarily, "Defendants may raise truth as an affirmative defense and prove that their statements were true." *Wang v. Univ. of Pittsburgh*, 181 F.4th 301, 311–12 (3d Cir. 2026); *see* 42 Pa. C.S. § 8343(b)(1). Typically, courts may not rule on truth at the motion to dismiss stage. *Wang*, 181 F.4th at 311. But when "a statement's truth is apparent on the complaint's face[,]" then this Court may grant a motion to dismiss based on truth. *Id.*; *see Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Instantly, the Amended Complaint, like the Complaint before it, pleads facts establishing Harvie's conduct was within the scope of the investigation and as such, the challenged description created no false impression. This Court should dismiss those claims.

**b. The FBI statements fail to meet the standard of "highly offensive to a reasonable person."**

To succeed in a claim for false light, Plaintiff must satisfy an objective standard, *i.e.*, he must show a reasonable person would take offense to the subject matter. *See Graboff*, 744 F.3d at 136; *Larsen*, 543 A.2d at 1188. The Amended Complaint concedes that Harvie testified before a federal grand jury, Am. Compl. ¶¶ 4, 31, 45, 48, 105, and that this fact has been publicly reported since 2022, Am. Compl. ¶¶ 4, 31. Describing a person by the technical term, which the Amended Complaint itself defines, and which carries no implication of wrongdoing, is not conduct which a reasonable person would find highly offensive.

**c. False light carries the same First Amendment protections as defamation.**

The state-law elements of the tort of false light invasion of privacy are not the end of the analysis. False light also requires pleading actual malice. *See Graboff*, 744 F.3d at 136 (noting that Pennsylvania follows the Second Restatement); *see also Krajewski*, 53 A.3d at 807–08, 810. "'[F]alse light invasion of privacy claims incorporate the same First Amendment protections as claims for defamation under state law.'" *Tannous*, 702 F. Supp. 3d at 321 (quoting *Taha v. Bucks Cnty.*, 2015 WL 9489586 (E.D. Pa. Dec. 30, 2015) (Restrepo, J.)).

Indeed, "for both defamation and false light claims, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law . . ." *Id.* at 320 (quoting *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)); *see also McCafferty*, 955 F.3d at 357 (3d Cir. 2020) ("***Pure opinions cannot defame***." (emphasis added)); *U.S. Healthcare, Inc.*, 898 F.2d at 927 ("[P]ure opinion receives absolute protection under the First Amendment."); Whether a statement is fact or opinion is a question of law for the Court. *Pace*, 432 F. Supp. 3d at 512. The result is dispositive.

*Tannous* is instructive. There the court first dismissed the plaintiff's defamation claim on the ground that the defendant's online commentary consisted of "matters of opinion that are subject

to disagreement and do not imply the presence of undisclosed facts," is on point. *Tannous*, 702 F. Supp. 3d at 321. On reconsideration, the court held the identical conclusion required dismissal of the false light claim premised on the same publications as those statements "receive First Amendment protection and are not actionable under either defamation or false light." *Id.*

As set forth in Section II.B.b above, the statements regarding Harvie as a "subject of an FBI Investigation" and regarding the county employee are constitutionally protected expressions of opinion, rhetorical hyperbole, and/or unverified rumor. Count II therefore fails as to those statements for precisely the same reasons as Count I.

In anticipation, the Amended Complaint pleads Defendants "create th[e] false impression by selectively publicizing portions of the publicly available facts while omitting material facts." Am. Compl. ¶ 121. Plaintiff presumably relies on the principle that a false light plaintiff may establish falsity by showing that a defendant "selectively printed or broadcast true statements or pictures in a manner which created a false impression." *Graboff*, 744 F.3d at 136. That theory does not survive here because the resulting impression is protected opinion. *Tannous* squarely so held.

The plaintiff in *Tannous* alleged that the defendant had "cherry-picked" among his social media posts to create a false impression, the identical theory pleaded in Paragraphs 121–122 of the Amended Complaint. The court assumed the allegation true and dismissed anyway: "[e]ven if Defendant selectively republished the tweets to create a false impression . . . which could satisfy the "falsity" prong of a false light claim – it nonetheless remains merely an opinion about Plaintiff, even if it is promoted through selectively reprinted material." *Tannous*, 702 F. Supp. 3d at 321. In other words, selective presentation may establish falsity as a matter of state tort law while leaving the publication fully protected as a matter of federal constitutional law. A plaintiff cannot convert protected opinion into liability by recharacterizing the speaker's editorial choices as omissions.

*See Pace*, 432 F. Supp. 3d at 513 (where a defendant "is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." (quoting *Haynes*, 8 F.3d at 1227)).

The narrow exception to the opinion rule applies only where an opinion "could reasonably be understood to imply undisclosed defamatory facts . . . ." *Id*. That exception has no place here, as established by the Amended Complaint's own allegations. The factual predicate for the statements is disclosed, public, and pleaded in the Amended Complaint itself. Where the facts underlying a characterization are disclosed to the audience or as here, are matters of public record which the audience can independently evaluate, the characterization implies no undisclosed defamatory facts and remains protected. *See Tannous*, 697 F. Supp. 3d at 365 (E.D. Pa.) (finding no "implication of undisclosed facts" where the publication set out the material it commented on).

The statements regarding the county employee are constitutionally protected opinion, and because false light claims "incorporate the same First Amendment protections as claims for defamation under state law[,]'" *Tannous*, 702 F. Supp. 3d at 321, Count II must be dismissed as it pertains to the statements regarding the county employee for the same reasons as Count I.

### D. <u>CLAIMS BASED ON STATEMENTS FIRST PUBLISHED BEFORE AUGUST 5, 2025, ARE TIME-BARRED.</u>

Pennsylvania imposes a one-year limitations period on defamation and false light invasion of privacy claims. 42 Pa. C.S. § 5523(1); *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012). The single publication rule, § 8341(b), fixes accrual at first publication. *In re Phila. Newspaper*, 690 F.3d at 174. The Complaint was filed August 5, 2026, meaning any allegations based on statement first published before August 5, 2025, are time-barred. To the extent Plaintiff seeks recovery for statements first published before August 5, 2025, those claims are time-barred

and should be dismissed. *Doroshin v. Drexel Univ.*, 2024 WL 4349948, at *8 (E.D. Pa. Sept. 30, 2024), *aff'd*, 2025 WL 3540059 (3d Cir. Dec. 10, 2025) (nonprecedential).

### E. FEES AND COSTS MUST BE AWARDED AGAINST BOTH HARVIE AND THE COMMITTEE UNDER PENNSYLVANIA'S ANTI-SLAPP ACT.

This action is a prototypical SLAPP. Harvie, a congressional candidate and his Committee (until last week), sued a political action committee and its president in a blatant attempt to silence political speech regarding Harvie's background, which was published to the voters of Pennsylvania's 1st Congressional District, during a contested general election. Our legislature has made the consequences of such a suit mandatory. Defendants are immune under 42 Pa. C.S. § 8340.15 and as such the Court "shall award" fees, costs, and expenses against Harvie. 42 Pa. C.S. § 8340.18(a)(1). Since Harvie's Committee ***voluntarily withdrew*** from this action, only after Defendants asserted immunity, the Court "shall award" the same relief against the Committee, jointly and severally with Harvie. 42 Pa. C.S. § 8340.18(a)(2).

#### a. The Anti-SLAPP Act immunizes Defendants' speech and mandates fee shifting in this Court.

Pennsylvania's Anti-SLAPP Act, 42 Pa. C.S.A. §§ 8340.11-8340.18, "grants immunity to those groups or parties exercising the rights to protected public expression" and "awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression." 42 Pa. C.S.A. § 8340.12(3). The General Assembly directed that "[b]road construction of this subchapter will implement" those goals. 42 Pa. C.S.A. § 8340.12(4).

"Protected public expression" includes a person's "exercise, on a matter of public concern, of the rights of freedom of speech or of the press, the right to assemble or petition or the right of association, guaranteed by . . . the First Amendment to the Constitution of the United States" or

Article I, Sections 7, 20 of the Pennsylvania Constitution. 42 Pa. C.S.A. § 8340.13. None of the Act's enumerated exclusions applies to a defamation and false light action brought by a congressional candidate against a political committee over campaign communications. *See* 42 Pa. C.S.A. § 8340.14(b).

A person "is immune from civil liability for a cause of action based on protected public expression" if the party asserting the cause of action "fails to . . . establish a prima facie case as to each essential element of the cause of action" or fails to "state a cause of action upon which relief can be granted," or if "[t]here is no genuine issue as to any material fact" and the defendant "is entitled to judgment as a matter of law in whole or in part." 42 Pa. C.S.A. § 8340.15. "In other words, if a claim is dismissed before trial based on any one of three standards—the federal motion to dismiss standard, the trial standard, or the summary judgment standard—the court must shift the fees and costs to the plaintiff who wrongly filed a SLAPP suit." *Lento Law Group*, 2026 WL 2100471, at *11 (citing 42 Pa. C.S.A. §§ 8340.15, 8340.18).

Importantly, fee shifting is mandatory. "If the party is immune under section 8340.15 . . . the court *shall award* the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." 42 Pa. C.S.A. § 8340.18(a)(1) (emphasis added).

Further the pendency of the Act's special-motion procedure does not change the analysis. Although Section 8340.16 is not yet effective, it is not "the only procedural mechanism through which a party may assert his immunity." *Lento Law Group*, 2026 WL 2100471, at *11 (citing 42 Pa. C.S.A. § 8340.16(c)). Section 8340.16(c) "explicitly makes the immunity defense available through other motions," and "[f]or the fee-shifting provision to apply, therefore, the Court need only find the defendant was immune under § 8340.15 and that the plaintiff failed to state a claim

upon which relief can be granted." *Id*. This Court has already determined that the Act's immunity and mandatory fee-shifting provisions are substantive and apply in federal court, and that a defendant who prevails on a Rule 12(b) motion is entitled to attorney fees, court costs, and expenses of litigation under § 8340.18(a)(1). *Id*. at *16.

**b. Fees and Costs must be awarded against Harvie.**

In the instant matter, every predicate for mandatory fee shifting is satisfied. *First*, Harvie commenced a cause of action based on protected public expression. Am. Compl. ¶¶ 1–2, 53–54, 61–63, 109, 116, 127. *Second*, Harvie himself pleads that the speech was directed to, and received by, the voters of Pennsylvania's 1st Congressional District. Am. Compl. ¶¶ 2, 75, 101, 126. *Finally*, speech about a candidate for federal office, published to that candidate's electorate during a general election, is the paradigm of expression "on a matter of public concern." 42 Pa. C.S.A. § 8340.13; *see* Section II.B.b, *supra*.

As set forth fully Sections II.B through II.D, Harvie has failed to state a cause of action upon which relief can be granted and has failed to establish a *prima facie* case as to each essential element of defamation and false light. Defendants are therefore immune under Section 8340.15(1)(i) and (ii). Moreover, Section 8340.18(a)(1) directs that the Court "shall award" Defendants their attorney fees, court costs, and expenses of litigation on each dismissed claim. *Lento Law Group*, 2026 WL 2100471, at *11, *16.

**c. Fees must be awarded against Bob Harvie for Congress, which withdrew from this action after Defendants asserted immunity.**

The General Assembly anticipated the precise tactic employed by the Committee in the present case. Section 8340.18(a)(2) provides:

> If the party asserts protected public expression immunity and the opposing party ***voluntarily discontinues*** the action under Pa.R.C.P. No. 230 (relating to voluntary nonsuit), with or without prejudice, the court shall award the asserting party

> attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action.

42 Pa. C.S.A. § 8340.18(a)(2) (emphasis added). The Anti-SLAPP Act likewise contemplates that, after immunity is asserted, "[a] party may voluntarily discontinue all or part of the party's action," and the asserting party "may move to recover attorney fees, court costs and expenses of litigation under section 8340.18." *Id.* § 8340.16(f)(3)-(4).

The instant sequence is on point. *First*, on August 5, 2026, Harvie and the Committee jointly filed the Complaint, asserting both counts "Against All Defendants" on behalf of "Plaintiffs Bob Harvie and Bob Harvie for Congress." Compl., Count I & Count II; *id.* ¶¶ 79, 101. *Second*, on October 6, 2026, Defendants filed their first Motion to Dismiss and Application for Attorneys' Fees and Costs, ***which expressly asserted protected public expression immunity under Section 8340.15 and sought fees under Section 8340.18 against both Harvie and the Committee***. Doc. 10 at 23–25.

*Finally*, rather than defend the Committee's claims, Plaintiffs abandoned them. Twenty-one days after service of Defendants' motion, on October 27, 2026, Harvie filed the Amended Complaint as of right under Rule 15(a)(1)(B). The Amended Complaint deletes the Committee from the caption and from every count, strikes the allegations describing the Committee and its mailing address, *Compare* Compl. ¶¶ 13–14, *with* Am. Compl. ¶¶ 11–18 and strikes the Committee's only damages theory—that it "has been forced to divert and reallocate campaign resources," Compare Compl. ¶¶ 99, 111, with Am. Compl. ¶¶ 116–117, 127–128. The Committee's claims were not cured. They were discontinued.

The discontinuance triggers Section 8340.18(a)(2). Defendants "assert[ed] protected public expression immunity" before the withdrawal. Doc. 10 at 23–25. The Committee "voluntarily discontinue[d] the action." Since the Act makes the award mandatory "with or without prejudice,"

foreclosing any argument that a without-prejudice withdrawal by amendment, rather than a dismissal with prejudice, avoids the fee consequence. Notably, the award runs "jointly and severally against each adverse party that asserted the cause of action," and the Committee asserted both causes of action in the Complaint. 42 Pa. C.S.A. § 8340.18(a)(2). The statute does not condition the award on a prior merits determination, and it does not permit a plaintiff to escape fees by dropping out before the court rules. Indeed, the very point of the provision, a SLAPP plaintiff who has already imposed the cost of defending protected speech cannot moot the defendant's remedy through voluntary dismissal.

The Anti-SLAPP Act's reference to a discontinuance "under Pa.R.C.P. No. 230" does not alter the result in this Court because the Act's fee-shifting provisions are substantive and apply here, *Lento Law Group*, 2026 WL 2100471, at *16, so the Court applies them through their federal procedural analogues. In federal court, a plaintiff's unilateral abandonment of its claims before an answer is a voluntary dismissal, Fed. R. Civ. P. 41(a)(1)(A)(i), and the dropping of a party is governed by Rule 21, under which the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Whether the Committee's exit is characterized as a Rule 41 dismissal or a Rule 21 drop, it is the functional equivalent of a Rule 230 discontinuance, a voluntary, unilateral termination of the Committee's claims, without prejudice, before any adjudication. To read the cross-reference to Rule 230 as confining Section 8340.18(a)(2) to state court would permit a SLAPP plaintiff to defeat a substantive Pennsylvania remedy simply by invoking federal diversity jurisdiction, a result the General Assembly's command of "[b]road construction," 42 Pa. C.S.A. § 8340.12(4), does not allow.

The Committee's departure from the caption does not deprive the Court of authority to award fees against it. A court retains jurisdiction to resolve collateral matters, including fee and

sanction awards, against a party whose claims have been voluntarily dismissed. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990). A fee award under § 8340.18(a)(2) is precisely such a collateral determination; it does not require adjudication of the Committee's abandoned claims, only a finding that immunity was asserted and the claims were thereafter voluntarily discontinued. Both facts appear on the docket.

Finally, the Anti-SLAPP Act independently provides that a party who "would have prevailed on a ground under section 8340.15" in a prior action in which "the court did not make a determination on immunity" has a cause of action for the attorney fees, costs, and expenses of the underlying action, together with punitive damages upon proof that the action "was commenced or continued for the sole purpose of harassing, intimidating, punishing or maliciously inhibiting protected public expression." 42 Pa. C.S.A. § 8320.1(a)–(b). The Committee's withdrawal before any ruling on immunity is exactly the circumstance which Section 8320.1 addresses. Rather than relegate Defendants to a second lawsuit to recover what Section 8340.18(a)(2) already mandates, the Court should award those fees in this action, where the record of the Committee's assertion and abandonment of its claims is already before it.

Accordingly, Defendants respectfully request that the Court award Defendants their reasonable attorney fees, court costs, and expenses of litigation under 42 Pa. C.S.A. § 8340.18(a)(1) and (a)(2), jointly and severally against Plaintiff Harvie and the Committee, and direct Defendants to submit an itemized fee petition within fourteen days of the Court's order, or on such other schedule as the Court deems appropriate. *See* Fed. R. Civ. P. 54(d)(2).

## III. CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim and fees and costs must be awarded against Plaintiff Bob Harvie and Bob Harvie for Congress to Defendants pursuant to Pennsylvania's Anti-SLAPP Act.

Respectfully submitted,

**BOCHETTO LENTZ & HEIM, P.C.**

Date: November 2, 2026

By: */s/ George Bochetto*

George Bochetto, Esquire
PA Bar No.: 27783
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
gbochetto@bochettoandlentz.com
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**LEX POLITICA**
Dennis W. Polio, Esquire
D.C. Bar No.: 198054
611 Pennsylvania Ave. SE, #353
Washington, DC 20003
(540) 268-2806
dpolio@lexpolitica.com
*Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*
Admitted *Pro Hac Vice*