**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOB HARVIE,**<br>**Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **No. 2:26-cv-05544** |
| **DEFENDING AMERICA PAC, INC. and CHRIS PACK,**<br>**Defendants.** | : | **JURY DEMANDED** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 8

I. The Amended Complaint States a Plausible Claim for Defamation. .......... 8

A. Defendants' Statements that Harvie Is an "FBI Corruption Subject" Are Capable of Defamatory Meaning. .......... 8

1. Defendants' Statements Constitute Defamation Per Se. .......... 9

2. Defendants' Statements Are Not "Substantially True" and Create a False Implication that Harvie Engaged in Criminal Wrongdoing. .......... 11

B. Defendants' Statements Regarding Inappropriate Conduct with a Bucks County Employee Are Capable of Defamatory Meaning. .......... 12

C. Defendants' Statements that Harvie Is an "FBI Corruption Subject" Are Statements of Fact, Not Opinion. .......... 13

1. Defendants' Statements Are Actionable Because They Imply the Existence of Undisclosed Defamatory Facts. .......... 14

2. Defendants' Statements Are Provably False. .......... 15

D. The Amended Complaint Supports an Inference that Defendants Acted with Actual Malice. .......... 15

1. The Amended Complaint Supports an Inference of Actual Malice with Respect to Defendants' "FBI Corruption Subject" Statements. .......... 16

2. The Amended Complaint Supports an Inference of Actual Malice with Respect to Defendants' Accusations of Inappropriate Conduct with a Bucks County Employee. .......... 17

II. The Amended Complaint States a Plausible Claim for False Light Invasion of Privacy .......... 18

III. Defendants Are Not Entitled to Fees Under Pennsylvania's Anti-SLAPP Act. .......... 21

A. Defendants Fail to Show that the Act's Immunity and Fee-Shifting Provisions Apply in Federal Court. .......... 21

B. Defendants Are Not Entitled to Fees Against Bob Harvie for Congress. .......... 23

1. The Committee Did Not Discontinue the Action Under Pa.R.Civ.P. 230. .......... 23

2. Rule 15(a)(1)(B) Governs and Precludes Defendants' Proposed Application of the Anti-SLAPP Act. .......... 25

CONCLUSION .......... 26

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AMI Affiliates, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
No. 94-cv-7194, 1995 WL 752387 (E.D. Pa. Dec. 15, 1995) ... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8

*Baker v. Lafayette Coll.*,
532 A.2d 399 (Pa. 1987) ... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 8

*Berk v. Choy*,
607 U.S. 187 (2026) ... 25

*Brinich v. Jencka*,
757 A.2d 388 (Pa. Super. Ct. 2000) ... 9

*Brophy v. Phila. Newspapers, Inc.*,
422 A.2d 625 (Pa. Super. Ct. 1980) ... 8

*Burns v. Cooper*,
244 A.3d 1231 (Pa. Super. Ct. 2020) ... 9

*Clemente v. Espinosa*,
749 F. Supp. 672 (E.D. Pa. 1990) ... 9

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ... 24

*Dougherty v. Boyertown Times*,
547 A.2d 778 (Pa. Super. Ct. 1988) ... 9

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
441 U.S. 211 (1979) ... 1

*Dunlap v. Phila. Newspapers, Inc.*,
448 A.2d 6 (Pa. Super. Ct. 1982) ... 11

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ... 8



#125934382v4

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019)....................24

*Graboff v. Colleran Firm*,
744 F.3d 128 (3d Cir. 2014)....................11, 18

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)....................18

*Henrich v. Colby's Crew Rescue*,
No. 25-4961, 2026 WL 839119 (E.D. Pa. Mar. 26, 2026)....................22

*In re Bath and Kitchen Fixtures AntiTr. Lit.*,
535 F.3d 161 (3d Cir. 2008)....................24

*In re Grand Jury Matter*,
682 F.2d 61 (3d Cir. 1982)....................14

*In re Subpoena 2018R00776*,
947 F.3d 148 (3d Cir. 2020)....................1

*Jakes v. Youngblood*,
782 F. Supp. 3d 210 (W.D. Pa. 2025)....................22

*Joseph v. Scranton Times L.P.*,
987 A.2d 633 (Pa. 2009)....................10

*Joseph v. Scranton Times L.P. ("Joseph II")*,
129 A.3d 404 (Pa. 2015)....................10

*Joseph v. Scranton Times L.P.* ("*Joseph I*"),
959 A.2d 322 (Pa. Super. Ct. 2008)....................9, 10

*Krajewski v. Gusoff*,
53 A.3d 793 (Pa. Super. Ct. 2012)....................18

*Kuwait & Gulf Link Transp. Co. v. Doe*,
216 A.3d 1074 (Pa. Super. Ct. 2019)....................13, 14

*Larsen v. Phila. Newspapers, Inc.*,
543 A.2d 1181 (Pa. Super. Ct. 1988)....................18

*Lento L. Grp. PC v. Estrada*,
No. 25-2763, 2026 WL 2100471 (E.D. Pa. July 21, 2026)....................21, 22, 23, 25



#125934382v4

*Masson v. New Yorker Mag., Inc.*,
501 U.S. 496 (1991) ... 11

*McCafferty v. Newsweek Media Grp.*,
955 F.3d 352 (3d Cir. 2020) ... 15

*McCaffery v. N.Y. Univ. Sch. of L.*,
No. 25-2429, 2026 WL 746606 (E.D. Pa. Mar. 16, 2026) ... 22

*Meyers v. Certified Guar. Co.*,
221 A.3d 662 (Pa. Super. Ct. 2019) ... 13, 14

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990) ... 14

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2010) ... 9

*Oxford House, Inc. v. Twp. of N. Bergen*,
158 F.4th 486 (3d Cir. 2025) ... 8

*Pace v. Baker-White*,
850 F. App'x 827 (3d Cir. 2021) ... 16

*Psota v. New Hanover Twp.*,
No. 20-5004, 2021 WL 6136930 (E.D. Pa. Dec. 29, 2021) ... 20

*Ralston v. Garabedian*,
623 F. Supp. 3d 544 (E.D. Pa. 2022) ... 18

*Salaam v. Trump* ("*Salaam I*"),
350 F.R.D. 14 (E.D. Pa. 2025) ... 22

*Salaam v. Trump* ("*Salaam II*"),
777 F. Supp. 3d 414 (E.D. Pa. 2025) ... 11, 12, 13

*Santillo v. Reedel*,
634 A.2d 264 (Pa. Super. Ct. 1993) ... 19

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ... 25

*Sprague v. Walter*,
656 A.2d 890 (Pa. Super. Ct. 1995) ........ 16

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ........ 15, 17, 18

*Tannous v. Cabrini Univ.*,
702 F. Supp. 3d 317 (E.D. Pa. 2023) ........ 20

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
442 A.2d 213 (Pa. 1981) ........ 8

*Threadgill v. Armstrong World Indus.*,
928 F.2d 1366 (3d Cir. 1991) ........ 22

*Trizechahn Gateway LLC v. Titus*,
976 A.2d 474 (Pa. 2009) ........ 23

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
377 F.3d 1081 (9th Cir. 2004) ........ 25

*Vivian v. Blank Rome, LLP*,
318 A.3d 890 (Pa. Super. Ct. 2024) ........ 13, 14

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980) ........ 25

*Wang v. Univ. of Pittsburgh*,
181 F.4th 301 (3d Cir. 2026) ........ 18

**Statutes**

42 Pa. Cons. Stat. § 8320.1(a)–(b) ........ 24

42 Pa. Cons. Stat. §§ 8340.11–8340.18 ........ 21

42 Pa. Cons. Stat. § 8340.15 ........ 22, 23

42 Pa. Cons. Stat. § 8340.15(1)(i) ........ 21

42 Pa. Cons. Stat. § 8340.15(1)(ii) ........ 21

42 Pa. Cons. Stat. § 8340.16. ........ 22

42 Pa. Cons. Stat. § 8340.16(c) ........ 21, 22

42 Pa. Cons. Stat. § 8340.18 ........ 22

42 Pa. Cons. Stat. § 8340.18(a)(1) ........ 21

42 Pa. Cons. Stat. § 8340.18(a)(2) ........ 23, 24, 25

42 Pa. Cons. Stat. § 8343(a) ........ 8

**Rules**

Fed. R. Civ. P. 12 .......... 24, 25
Fed. R. Civ. P. 12(b)(6) .......... 8, 21, 22
Fed. R. Civ. P. 15 .......... 24, 25
Fed. R. Civ. P. 15(a) .......... 25
Fed. R. Civ. P. 15(a)(1)(B) .......... 2, 23, 24, 25
Fed. R. Civ. P. 21 .......... 23, 24
Fed. R. Civ. P. 41(a)(1)(A)(i) .......... 23, 24
Fed. R. Civ. P. 56 .......... 22
Fed. R. Crim. P. 6(e)(2) .......... 1
Pa.R.Civ.P. 229 .......... 23
Pa.R.Civ.P. 230 .......... 23, 24

**Other Authorities**

Restatement (Second) of Torts § 566 .......... 14
Restatement (Second) of Torts § 571 .......... 9

## INTRODUCTION

Federal grand jury proceedings are closed to the public. Participants, including grand jurors, prosecutors, and certain government personnel, are bound by secrecy. Fed. R. Crim. P. 6(e)(2). Indeed, "[p]rotecting the secrecy of an investigation is a paramount interest of the government." *In re Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020). This veil of secrecy ensures full and frank testimony, protects innocent people from unwarranted public ridicule, and permits law enforcement to investigate criminal wrongdoing without public interference. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979).

Defendants—out-of-state political consultant Chris Pack and his Super PAC, Defending America PAC, Inc.—have exhibited wanton disregard for the sanctity of grand jury proceedings by broadly disseminating defamatory statements falsely characterizing Plaintiff Bob Harvie as a "subject" of an FBI investigation for a singular purpose: to impute criminal conduct to him just to score political points in a hotly contested political campaign. This is precisely why grand jury proceedings are secret—to prevent the public, including unscrupulous political operatives like Defendants, from attaching criminal liability to an innocent person called to testify.

Defendants' statements that Harvie was an "FBI corruption subject" are not opinions or mere obscenities, epithets, name-calling, hyperbole, or political bluster. Rather, the purpose and effect of Defendants' statements are to knowingly, recklessly, and falsely portray Harvie as implicated in criminal corruption and to destroy Harvie's reputation in his community. And if that were not enough, Defendants have spread lies that Harvie, as a Bucks County Commissioner, engaged in inappropriate conduct with a county employee and helped secure her a job promotion. These "word on the street," unverified accusations are malicious and serve only to blacken Harvie's reputation in his community. Even in the context of a competitive Congressional race, defamatory conduct is indefensible and therefore actionable.

Defendants move to dismiss Harvie's defamation and false light invasion of privacy claims, arguing that the Amended Complaint[1] fails to state a claim upon which relief can be granted. Harvie has sufficiently alleged that Defendants' statements are capable of defamatory meaning, are actionable assertions of fact rather than protected opinion, and falsely impute criminal and other misconduct to him. The Amended Complaint also sufficiently alleges that Defendants published these statements with reckless disregard for the truth and placed Harvie in a false and offensive light. Finally, Pennsylvania's Anti-SLAPP statute does not entitle Defendants to attorneys' fees. Defendants' motion should be denied in its entirety.

## FACTUAL BACKGROUND[2]

### Harvie's History of Public Service

At all times relevant to the Amended Complaint, Plaintiff Bob Harvie, a lifelong resident of Bucks County, Pennsylvania, was the Democratic Party nominee for Representative in Congress for Pennsylvania's 1st Congressional District in the November 3, 2026 General Election. Am. Compl. ¶¶ 19, 20.[3] Throughout his adult life, Harvie has served in roles of public trust in the Bucks County region because of his reputation in the community. *Id.* ¶ 21. He taught for twenty years at Bucks County Technical High School and served on the Falls Township Board of Supervisors from 2003 to 2019, including as Chair of the Board from 2008 to 2019. *Id.* ¶¶ 22, 24.

Harvie currently serves as Vice-Chair of the Board of Commissioners of Bucks County. *Id.* ¶ 27. He was first elected to the Board in 2019 and reelected in 2023. *Id.* ¶ 25. He served as

---

[1] Bob Harvie and Bob Harvie for Congress filed their Complaint on August 5, 2026. Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Harvie filed an Amended Complaint on October 27, 2026. ECF No. 12. The Complaint was amended to omit Bob Harvie for Congress as a party to this action.

[2] Plaintiff states the facts as alleged in his Amended Complaint.

[3] After the Amended Complaint was filed, Harvie was elected to Congress on November 3, 2026.

Chair from 2022 to 2023 and again from 2025 to 2026. *Id.* ¶ 26. He also serves or has served in other roles of public trust, including as a member of the Southeastern Pennsylvania Transportation Authority (SEPTA) and the Pennsylvania Convention Center Authority, among others. *Id.* ¶ 28.

**The Public Record Regarding the FBI's Investigation in Bucks County**

In July 2020, *LevittownNow.com* reported an FBI investigation into Bucks County matters "related to local government and politics, unions, contractors, political donations, and recent problems in the Pennsbury School District." *Id.* ¶¶ 29–30. In September 2022, the outlet reported, without identifying its source, that Harvie had testified as a witness before a federal grand jury in connection with the investigation. *Id.* ¶¶ 31–32. The article noted that federal law enforcement and prosecutors "are unable to break grand jury secrecy to comment" on the investigation. *Id.* ¶ 33. The outlet reported that "no charges have been filed, no indictments handed down, and no accusations of wrongdoing have been made by authorities" and that testifying before a grand jury "does not confirm any involvement in potential crimes." *Id.* ¶¶ 34–35.

A year later, in September 2023, during Harvie's reelection campaign for Bucks County Commissioner, *LevittownNow.com* reported that Harvie's Republican opponents sent out campaign mailers stating that Harvie was "wrapped up in an FBI investigation." *Id.* ¶ 38. Harvie immediately denied this claim, as quoted by *LevittownNow.com*: "I am not now and never have been the target of any criminal investigation." *Id.* ¶ 38. The article reported that "[n]o charges have been filed, no indictments handed down, and no accusations of wrongdoing have been made public by authorities." *Id.* ¶ 39.

Contemporaneous public reporting in *NewtownPaNow.com* corroborated Harvie's denial: "Sources close to the probe have told *LevittownNow.com* over the past year that they had not seen evidence Harvie was the target of the investigation." *Id.* ¶ 40. The article reiterated that "[n]o

charges or indictments have been filed related to the investigation." *Id.* ¶ 41. The Republican candidates later "denounced the mailer and apologized," and Harvie publicly stated that one of the Republican candidates "admitted" to another Bucks County commissioner "that [the candidate] knows these attacks are lies." *Id.* ¶ 42.

More recent reporting by the *Philadelphia Inquirer* confirmed that, as of October 19, 2026, "[n]o indictments or charges have been filed in connection with the investigation." *Id.* ¶ 43. The *Inquirer* also reported that "[i]n an interview, Harvie said he has never been under investigation" and that he "testified as a witness before the grand jury in addition to other officials," and "does not have any files to release." *Id.* ¶ 44.

Harvie was never a target of the FBI's investigation in Bucks County and has never been charged with any crime in connection with the investigation. *Id.* ¶¶ 46–47. Harvie understood that he appeared in the capacity of a witness at the time of his grand jury testimony in 2022. *Id.* ¶ 48. He has had no further contact with the FBI since 2022 and has not been asked for further testimony, information, or assistance from the FBI. *Id.* ¶ 45.

**<u>Defendants Accuse Harvie of Being an "FBI Corruption Subject"</u>**

In April 2025, Harvie announced his candidacy for the U.S. House of Representatives and, in September 2025, filed a Statement of Candidacy with the Federal Election Commission for Pennsylvania's 1st Congressional District. *Id.* ¶ 50. Harvie won the Democratic Party's nomination for Representative in Congress for Pennsylvania's 1st Congressional District in the May 19, 2026 Primary Election. *Id.* ¶ 51. Harvie's political opponent in the General Election on November 3, 2026 was Republican Congressman Brian Fitzpatrick. *Id.* ¶ 52.

Throughout Harvie's Congressional campaign, Defendants repeatedly published false statements asserting or implying that Harvie was, or is, "the subject" of the FBI's investigation in

Bucks County. *Id.* ¶ 58. The *Philadelphia Inquirer*'s article on October 19, 2026, identified "pro-Fitzpatrick super PAC, Defending America PAC," as "churning out different versions of the attack" that Harvie is the "subject" of an FBI corruption investigation, and described the ads as "imply[ing] that Harvie's grand jury testimony indicates malfeasance." *Id.* ¶ 59. Defendant Chris Pack is an out-of-state political consultant based in New York responsible for developing and/or approving Defending America PAC's campaign of calling Harvie an "FBI corruption subject." *Id.* ¶ 55. A recent news report identified Defendant Pack as "President" of Defending America PAC. *Id.* ¶ 56. Campaign finance reports reveal payments by Defending America PAC for "strategy consulting" to Defendant Pack's firm, Breakwall Group. *Id.* ¶ 57.

Defendants operate their campaign to defame Harvie via a website, Fire Bob Harvie (www.fireharvie.com), which bears the disclaimer: "Paid for by Defending America PAC. Not authorized by any candidate or candidates [sic] committee. 824 S Miledge [sic] Avenue, Ste 102, Athens, GA 30605." *Id.* ¶¶ 61–62. Defending America PAC operates another website—fbicorruptionsubjectbobharvie.com—with the same disclaimer. *Id.* ¶¶ 66–67.

Fireharvie.com repeatedly refers to Harvie as "the subject" of an FBI investigation. *Id.* ¶ 63. Between August 2025 and October 2026, Defending America PAC used this term in at least thirty social media posts, including at least thirteen Facebook posts. *Id.* ¶ 69. In more than one post, Defending America PAC and Pack suggested they had access to undisclosed information, including Harvie's "FBI file," and warned that "[e]very voter in PA-1 will soon learn all about this." *Id.* ¶¶ 70–71. During this same period, Pack called Harvie an "FBI corruption subject" in at least twenty X.com posts and made the same accusation to reporters. *Id.* ¶¶ 72–73.

**<u>Defendants Double Down on Defamation</u>**

On July 2, 2026, Harvie sent a letter to Defendants demanding that they "immediately cease and desist from falsely calling Bob an 'FBI corruption subject,' remove any such references on websites and social media accounts controlled by Defending America PAC or Chris Pack, and issue a public apology to set the record straight for the voters of Pennsylvania's 1st Congressional District." *Id.* ¶ 76 ("Cease-and-Desist Letter"). The letter made clear that Defendants "cannot easily disclaim awareness of serious doubts as to [the] truth" of Defendants' baseless allegations when they "republish[] a claim after it has been publicly and specifically denied by its subject, and after press reporting has corroborated the denial." *Id.* ¶ 77. The letter gave explicit notice of Harvie's public denials and other statements related to his grand jury testimony. *Id.* ¶ 78.

In response, Defendant Pack reposted the letter on his X.com account, stating that he "Agreed." *Id.* ¶ 80. In his post, he again called Harvie an "FBI Corruption Subject," adding, "(And you'll need to update this to 28.)"




Defending America PAC, Inc.
July 2, 2026
Page 3

officials.[4] Bob further stated publicly that Gene DiGirolamo, one of the Republican candidates promoted in the mailer, had privately acknowledged to a fellow commissioner that the attacks were lies.[5]

You have been on notice that Bob denies ever being under FBI investigation, yet you built a website, produced a video, and parroted the same baseless attack over thirty times on social media. In addition, your consultant, Chris Pack, has called Bob Harvie an FBI corruption subject or under FBI investigation on X.com at least twenty-seven times. Campaign finance reports also reveal payments by Defending America PAC to Chris Pack's firm, Breakwall Group, for various reasons including "strategy consulting." My client understands that Mr. Pack has repeatedly told reporters that Bob is an FBI corruption subject or under FBI investigation. For these reasons, my client understands that Mr. Pack has been involved in Defending America PAC's publications calling Bob an "FBI corruption subject." These repeated statements evidence your reckless disregard whether Bob was an "FBI corruption subject" or not. And if you somehow had not already been on notice of Bob's public denials and other statements around the grand jury testimony, this letter now puts you on notice.

Bob is prepared to defend his rights as he continues to make his case to the voters. Guide your actions accordingly.

Sincerely,

/s/ Timothy J. Ford

Timothy J. Ford

*Id.* Pack also posted the letter to his X.com account, calling Harvie an "FBI corruption subject" twice more, and adding "*29, and 30." *Id.* ¶ 81. Since Harvie sent his letter, Defendants have admitted to calling Harvie "an FBI corruption subject dozens of additional times." *Id.* ¶ 83.

**Without Any Facts, Defendants Make Outrageous Accusations of Inappropriate Conduct**

Defendants have also falsely accused Harvie of inappropriate conduct with a Bucks County employee. In a series of posts and emails, Defendants accused Harvie of "getting cozy" and "getting a little too cozy" with a county employee and published screenshots of a Facebook post featuring a photo of Harvie with this text: "I'm Bobbie Harvie and I banged #SaraRisi, a Bucks County Children Children [sic] and Youth Worker while I was married. Did I help her become a supervisor?"




*Id.* at ¶ 88. Defending America PAC posted the same accusation of Harvie "getting cozy with a county employee" on its Facebook page. *Id.* at ¶ 89. On July 29, 2026, Defendants emailed the post to their followers and linked to the Facebook screenshot. *Id.* at ¶ 90.

These accusations are false. Harvie never cheated on his wife, never had sex with a Bucks County employee, and never used his position to influence a decision to promote a Bucks County

employee. *Id.* at ¶¶ 91–92. Defendants made no effort to verify the truth of the Facebook screenshot before republishing it and disseminating it to their mailing list. *Id.* at ¶ 94.

## ARGUMENT[4]

### I. The Amended Complaint States a Plausible Claim for Defamation.

To state a cause of action for defamation, a plaintiff must make averments of fact which, if proven, would establish the elements of Pennsylvania's Uniform Single Publication Act. 42 Pa. Cons. Stat. § 8343(a). In their Motion to Dismiss ("MTD"), Defendants challenge just two elements: (1) whether the statements raised in the Amended Complaint are capable of defamatory meaning; and (2) whether the Amended Complaint alleges facts sufficient to plead actual malice.

#### A. Defendants' Statements that Harvie Is an "FBI Corruption Subject" Are Capable of Defamatory Meaning.

Defendants first contend that the defamatory statements raised in the Amended Complaint are not capable of defamatory meaning. In determining whether a statement is capable of defamatory meaning, the Court considers the statements in context, including "the effect [the statement] is fairly calculated to produce [and] the impression it would naturally engender, in the minds of the average persons among whom [the statement] is intended to circulate." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981); *see also Brophy v. Phila. Newspapers, Inc.*, 422 A.2d 625, 629 (Pa. Super. Ct. 1980) ("To ascertain the meaning of a

---

[4] To prevail on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Defendants must show that Plaintiff fails to allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need only set out factual allegations that, when taken as true, "state a plausible ground for relief," and support "a reasonable expectation that discovery will reveal evidence" of the elements of the claim. *Oxford House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 493 (3d Cir. 2025) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)). The court therefore accepts Plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678.

defamatory communication, it must be read in context.”). In addition, “the nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning.” *Dougherty v. Boyertown Times*, 547 A.2d 778, 783 (Pa. Super. Ct. 1988).

**1. Defendants’ Statements Constitute Defamation Per Se.**

Under Pennsylvania law, a statement can be defamatory on its face (“per se”) if it falsely imputes to the plaintiff a criminal offense punishable by imprisonment. *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. Ct. 2000). These sorts of statements are actionable without proof of special (pecuniary) damages. Statements “implicating a person committed a crime, as could be inferred from [the contested] statement in the context at issue, are capable of a defamatory meaning as a matter of law.” *Burns v. Cooper*, 244 A.3d 1231, 1237 (Pa. Super. Ct. 2020). It is not necessary that the defamer charge any particular criminal offense by name or description, if the words used imply some crime. Restatement (Second) of Torts § 571 cmt. c; *see also Clemente v. Espinosa*, 749 F. Supp. 672, 679 (E.D. Pa. 1990). If, “when viewed *in toto*, the accurate statements create a false implication, the speaker may be liable for creating a defamatory implication.” *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 478 (E.D. Pa. 2010).

False allegations tying an individual to criminal activity are so inherently harmful to an individual’s reputation that courts recognize such falsehoods as defamatory per se. *See, e.g.*, *AMI Affiliates, Inc. v. U.S. Dep’t of Hous. & Urb. Dev.*, No. 94-cv-7194, 1995 WL 752387, at *4 (E.D. Pa. Dec. 15, 1995) (“[A] statement that someone is under criminal investigation can reasonably be construed as defamatory. Indeed, such a statement is tantamount to words imputing criminal conduct, which is considered slander per se under the laws of Pennsylvania.”). In *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 332 (Pa. Super. Ct. 2008) (“*Joseph I*”), the Superior Court affirmed the trial court’s defamation per se finding that the newspaper defendants “directly or

implicitly indicat[ed]" that the plaintiffs were engaged in criminal enterprises when, in fact, the FBI's investigation targeted other individuals and businesses. *Id.* at 344.[5]

As in *Joseph I*, Defendants went beyond merely referencing an FBI investigation. Rather, they repeatedly and falsely portrayed Harvie himself as "the subject" of the investigation in Bucks County. Defending America PAC has referred to Harvie as an "FBI corruption subject" or "criminal subject" in at least thirty social media posts and throughout the fireharvie.com website. Am. Compl. ¶¶ 64, 69. Pack has called Harvie an "FBI corruption subject" in at least twenty posts or replies on his X.com account since August 2025. *Id.* ¶ 72. Upon information and belief, Pack has also told reporters that Harvie is an "FBI corruption subject." *Id.* ¶ 73.

Defendants made these statements without identifying any factual basis or providing clarifying context, despite public reporting that Harvie testified only as a witness and was never charged with or accused of any wrongdoing. *Id.* ¶¶ 4, 31, 34–35, 39–41, 43–44. As in *Joseph I*, the defamatory sting lies not in the existence of an FBI investigation, but in Defendants' repeated conveyance to members of Harvie's community that Harvie himself engaged in criminal conduct.

Defendants contend that these statements are "cherry-picked" and incapable of defamatory meaning "when viewed in complete context." MTD 5. But even in the context of a hotly contested political campaign, an average member of Harvie's community in Bucks County could reasonably understand these statements not as an objective description of Harvie's role as a witness in a grand jury investigation, but as assertions that Harvie was implicated in criminal corruption. Indeed, that is Defendants' very purpose: to invoke the secret FBI investigation—in the absence of any public

[5] In 2009, the Supreme Court vacated and remanded *Joseph I* on judicial integrity grounds. 987 A.2d 633 (Pa. 2009). The case was retried, and on appeal, the court did not address *Joseph I*'s finding that statements in the newspaper articles amounted to defamation per se. *Joseph v. Scranton Times L.P.*, 129 A.3d 404 (Pa. 2015) ("*Joseph II*").

designation, charge, or indictment—as part of a sustained political attack campaign to associate Harvie with criminal corruption.

Considered in context, Defendants' attempt to lessen the sting of their statements by citing the current political environment is self-serving and disingenuous. And, in any event, "the fact that statements [are] made in a political context does not indiscriminately immunize" such statements from liability. *Salaam v. Trump*, 777 F. Supp. 3d 414, 425 n.6 (E.D. Pa. 2025) ("*Salaam I*"). Thus, Defendants' statements are cast as assertions of fact capable of defamatory meaning, as sufficiently pleaded in Harvie's Amended Complaint.

**2. Defendants' Statements Are Not "Substantially True" and Create a False Implication that Harvie Engaged in Criminal Wrongdoing.**

Defendants assert the affirmative defense that these statements are "substantially true," based on the U.S. Department of Justice's definition of "subject," and that, accordingly, their statements are not actionable. MTD 7. Under the substantial truth doctrine, a statement is treated as true if the defendant can prove the statement to be "substantially true," such that "minor inaccuracies" do not render the statement false and "the substance, the gist, the sting, of the libelous charge [can] be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

But the substantial truth doctrine does not change the general rule that "a defamatory statement must be viewed in context and a defendant cannot use truth as a defense where the implication of the communication as a whole was false, even if the statement is literally accurate." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citation modified) (citing *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987); *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982)). Moreover, when an affirmative defense is raised on a motion to dismiss, "only those matters that are 'apparent on the face of the complaint' may be considered in evaluating

whether the statements are substantially true." *Salaam I*, 777 F. Supp. 3d at 427 (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

The substantial truth doctrine does not help Defendants because their statements are not even substantially true. The Amended Complaint alleges that the FBI investigated a diverse group of entities in Bucks County and that Harvie appeared before the grand jury as a witness. Am. Compl. ¶¶ 29–31. Defendants escalated those facts into the charge that Harvie is an "FBI corruption subject," invoking a term the U.S. Department of Justice Manual defines as a "person whose conduct is within the scope of the grand jury's investigation." *Id.* ¶ 60. This is not a "minor inaccuracy." The defamatory sting of these statements is that Harvie is not a witness but a wrongdoer, and this implication is calculated to tarnish Harvie's reputation in the community. Viewed in that context—as this Court must on a motion to dismiss, drawing all inferences in Plaintiff's favor—Defendants' statements are actionable as defamatory per se.

**B. Defendants' Statements Regarding Inappropriate Conduct with a Bucks County Employee Are Capable of Defamatory Meaning.**

Defendants' accusations were not limited to criminal misconduct. On fireharvie.com and Defending America PAC's Facebook page, Defendants published a new defamatory statement that "Harvie [is] getting a little too cozy with a county employee" along with a screenshot of Facebook post of Harvie with the text, "I'm Bobbie Harvie and I banged #SaraRisi, a Bucks County Children Children [sic] and Youth Worker while I was married. Did I help her become a supervisor?" Am. Compl. ¶¶ 87–89. On July 29, 2026, Defendants widely republished these statements and the screenshot via an email blast to their followers. *Id.* ¶ 90. Defendants now cast these statements as mere "word on the street" or "unverified rumor rather than a factual assertion by the speaker." MTD 9. But on a motion to dismiss, "the Court does not look to Defendant's interpretation of his [own] statement. . . . Plaintiffs' interpretation is what steers the analysis."

*Salaam I*, 777 F. Supp. 3d at 426. Each statement here is "reasonably capable of conveying *the particular meaning ascribed to it by the plaintiff*." *Id.*

As posted on fireharvie.com and disseminated via email blasts, Defendants' statements are not rumors or political hyperbole, but assertions of fact that directly impugn Harvie's character, integrity, and fitness for public office. Defendants' accusations convey not only that Harvie engaged in an extramarital sexual relationship with a county employee, but also that he abused his public position to secure her professional advancement. Defendants cannot dismiss these statements as nothing more than "word on the street," while simultaneously publishing specific accusations of sexual misconduct and abuse of office and exposing Harvie to public contempt and distrust among members of his community. These statements are also patently false, as set forth in the Amended Complaint. Am. Compl. ¶¶ 91–93. Defendants made no effort to verify the truth of the Facebook screenshot before republishing it on fireharvie.com and emailing it to their followers. *Id.* ¶ 94.

**C. Defendants' Statements that Harvie Is an "FBI Corruption Subject" Are Statements of Fact, Not Opinion.**

Once a statement is found capable of defamatory meaning, the question before the court is whether the statement constitutes an opinion or statement of fact. *Meyers v. Certified Guar. Co.*, 221 A.3d 662, 672 (Pa. Super. Ct. 2019). Under Pennsylvania law, only statements of fact, rather than "mere expressions of opinion," are actionable. *Kuwait & Gulf Link Transp. Co. v. Doe*, 216 A.3d 1074, 1086 (Pa. Super. Ct. 2019). "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Vivian v. Blank Rome*,

*LLP*, 318 A.3d 890, 900 (Pa. Super. Ct. 2024) (quoting *Meyers*, 221 A.3d at 670 (citing Restatement (Second) of Torts § 566 cmt. a (A.L.I. 1977))).[6]

### 1. Defendants' Statements Are Actionable Because They Imply the Existence of Undisclosed Defamatory Facts.

Defendants attempt to evade liability by labeling their statements "matters of opinion or rhetorical hyperbole about a public figure and political opponent." MTD 5. Yet "[t]here is no wholesale defamation exemption for anything that might be labeled 'opinion,'" because "expressions of 'opinion' may often imply an assertion of objective fact." *Vivian*, 318 A.3d at 900 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)). Indeed, in addition to statements of fact or pure opinion, a third category exists: a "mixed" expression of opinion that "gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant." *Meyers*, 221 A.3d at 670–671 (citing Restatement (Second) of Torts § 566 cmt. b. A mixed expression of opinion is actionable if it can be understood to imply the existence of undisclosed *defamatory* facts. *Id.* at 671 (citing Restatement (Second) of Torts § 566 cmt. c); *Kuwait*, 216 A.3d at 1086.

Here, in calling Harvie an "FBI corruption subject" without providing factual context, Defendants imply that they know undisclosed facts supporting that charge. This implication is especially troubling because grand jury proceedings are subject to strict secrecy rules. *See, e.g.*, *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982) ("It is settled federal policy that the grand jury system requires secrecy of grand jury proceedings."). Despite this secrecy, Defendants indicated they had access to undisclosed facts, including the contents of Harvie's "FBI file," posting twice on X.com: "Wait until they see everything that's in your FBI file, Bob. You have a

---

[6] Pennsylvania follows the Second Restatement's approach to defamation. *See Meyers*, 221 A.3d at 670.

long history of . . . being a criminal subject yourself. Every voter in PA-1 will soon learn all about this." Am. Compl. ¶¶ 70–71. These statements imply the existence of undisclosed defamatory facts and are therefore actionable under Pennsylvania law.

**2. Defendants' Statements Are Provably False.**

Defendants further argue that Harvie fails to allege that Defendants' statements are "provably false." MTD 6. But the Amended Complaint plausibly alleges that Defendants' statements about Harvie's involvement in an FBI investigation convey provably false defamatory assertions. As alleged, the FBI's investigation concerned a diverse group of entities in Bucks County, Am. Compl. ¶ 29, and a local news outlet reported that Harvie testified before the grand jury as a witness, *id.* ¶¶ 4, 31, 44. Harvie has never been charged with any crime, *id.* ¶¶ 3, 47, 103; and has had no contact with the FBI since his grand jury appearance, *id.* ¶ 45. Defendants nonetheless repeatedly published statements implying that Harvie was, or is, the "subject of an FBI investigation" and appeared before the grand jury because he was under criminal investigation. *Id.* ¶ 49. Taken as true, these allegations plausibly establish that Defendants' statements implying criminal wrongdoing are false.

**D. The Amended Complaint Supports an Inference that Defendants Acted with Actual Malice.**

Defendants next argue that Harvie has not alleged actual malice because Defendants are his political opponents and made their statements in the context of a political campaign. But actual malice does not connote ill will or improper motivation; rather, it refers to the speaker's knowledge that the statement is false or the speaker's reckless disregard for the truth. *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359 (3d Cir. 2020). Reckless disregard exists where there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Falsity combined with

evidence of the speaker's subjective awareness of probable falsity can satisfy the actual-malice standard. *See Sprague v. Walter*, 656 A.2d 890, 904 (Pa. Super. Ct. 1995). At the pleading stage, a public figure need only "allege *facts* to support an inference of actual malice." *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021).

**1. The Amended Complaint Supports an Inference of Actual Malice with Respect to Defendants' "FBI Corruption Subject" Statements.**

Here, the Amended Complaint alleges facts supporting an inference of actual malice as to Defendants' repeated statements that Harvie is an "FBI corruption subject," "the subject of an FBI investigation," or a "criminal subject." In September 2022, a local news outlet reported that Harvie testified as a witness before a grand jury, but that no charges, indictments, or accusations of wrongdoing had been made against him. Am. Compl. ¶¶ 31, 34. In September 2023, Harvie publicly denounced a campaign mailer claiming he was "wrapped up in an FBI investigation" as categorically false: "I am not now and never have been the target of any criminal investigation." *Id.* ¶¶ 37–38. Contemporaneous reporting corroborated his denial. *Id.* ¶ 40. More recently, the *Philadelphia Inquirer* reported that no indictments or charges have been filed in connection with the investigation and that in an interview, Harvie said he has never been under investigation and had testified as a witness. *Id.* ¶¶ 43–44.

Defendants' argument that Harvie never denied his involvement with the federal investigation and grand jury, MTD 14, misses the point. Harvie does not dispute that he testified as a witness before the grand jury. Rather, he alleges that Defendants have repeatedly portrayed him as implicated in criminal corruption, notwithstanding public reporting, as well as his own public denials, distinguishing his grand jury testimony from accusations of wrongdoing. A defendant who republishes a claim after it has been publicly and specifically denied by its subject, and after press reporting has corroborated the denial, cannot easily disclaim awareness of serious

doubts as to its truth. *See St. Amant*, 390 U.S. at 731–32 (reckless disregard may be found where a defendant publishes a statement "despite the publisher's awareness of its probable falsity").

On July 2, 2026, Harvie sent Defendants a Cease-and-Desist Letter identifying the falsity of their accusations and warning, "[I]f you somehow had not already been on notice of Bob's public denials and other statements around the grand jury testimony, this letter now puts you on notice." Am. Compl. ¶¶ 76–78. Defendant Pack reposted the letter on X.com, highlighting the statement that he had called Harvie an "FBI corruption subject" or "under FBI investigation" at least twenty-seven times, stating that he "[a]greed," again calling Harvie an "FBI Corruption Subject," and adding, "(And you'll need to update this to 28.)" *Id.* ¶ 80. Pack's defiant response and deliberate repetition of defamatory statements—despite notice of their falsity—reflect his reckless disregard for the truth of those statements and support a plausible inference of actual malice.

**2. The Amended Complaint Supports an Inference of Actual Malice with Respect to Defendants' Accusations of Inappropriate Conduct with a Bucks County Employee.**

The Amended Complaint also supports an inference of actual malice as to Defendants' accusations, published on fireharvie.com and emailed to their mailing list on July 29, 2026, that "Harvie [is] getting a little too cozy with a county employee" and that he engaged in sexual relations with a Bucks County employee while married and helped secure her promotion. Am. Compl. ¶¶ 87–90.

Harvie alleges that Defendants made no effort to verify the truth of the Facebook publication before reproducing it on fireharvie.com and emailing it to their mailing list. *Id.* ¶ 94. Failure to investigate does not alone support a finding of actual malice, but "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732. Moreover, the "purposeful avoidance of the truth is in a

different category" from a failure to investigate. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (citing *St. Amant*, 390 U.S. at 731, 733); *see also Wang v. Univ. of Pittsburgh*, 181 F.4th 301, 314 (3d Cir. 2026) ("Actual malice is even more apparent where facts show that a speaker or publisher decided—before investigating—to run with a particular narrative."). The "purposeful avoidance theory" supports actual malice where a reasonable jury could infer that the publisher "subjectively doubted the truth of the underlying information." *Ralston v. Garabedian*, 623 F. Supp. 3d 544, 603 (E.D. Pa. 2022).

Defendants themselves characterize these accusations as "word on the street," "unverified rumor[s]," and "conjecture[s]," asserting that "[n]othing in the publication states that Defendants investigated the claim, credited it, or adopted it as their own." MTD 10. Defendants, by their own account, chose to publish serious accusations of inappropriate conduct and abuse of public office based on a "crudely worded" Facebook post purporting to speak in Harvie's own voice, without making any effort to ascertain the truth. *Id.* These statements are patently false, as set forth in the Amended Complaint. Am. Compl. ¶¶ 91–93. Yet Defendants willfully amplified accusations of sexual misconduct and abuse of office that Defendants themselves called unverified. *Id.* ¶ 94; MTD 9, 17. Viewed in the context of Defendants' broader defamation campaign, these allegations support a plausible inference of actual malice.

## II. The Amended Complaint States a Plausible Claim for False Light Invasion of Privacy.

Under Pennsylvania law, false light encompasses not only false statements, but also statements that, "although true, are selectively publicized in a manner creating a false impression." *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Pa. Super. Ct. 2012); *see also Graboff*, 744 F.3d at 136. Indeed, "[l]iteral accuracy of separate statements will not render a communication 'true' where as here the implication of the communication as a whole was false." *Larsen v. Phila. Newspapers*,

*Inc.*, 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988). The Amended Complaint sufficiently alleges that Defendants' publications placed Harvie before the public in a highly offensive false light and that Defendants knew of or recklessly disregarded that false impression.

Defendants first argue that their "subject statements do not create a false impression" because Harvie's appearance before a federal grand jury is consistent with the U.S. Department of Justice's definition of a "subject" of an investigation. MTD 15. But Pennsylvania law recognizes that "a false light claim can be established where true information is released if the information tends to imply falsehoods." *Santillo v. Reedel*, 634 A.2d 264, 267 (Pa. Super. Ct. 1993). The Amended Complaint alleges that Harvie appeared before the grand jury as a witness, that no charges or accusations of wrongdoing were made against him, and that public reporting distinguished his testimony from involvement in criminal misconduct. Am. Compl. ¶¶ 4, 31, 34–35, 39–41, 43–44. By repeatedly labeling Harvie an "FBI corruption subject" without that material context, the Amended Complaint alleges that Defendants placed Harvie before the public in the false light of a person implicated in federal criminal corruption.

Defendants next argue that the "FBI statements fail to meet the standard of 'highly offensive to a reasonable person.'" MTD 15. Defendants again rely on the U.S. Department of Justice's definition of subject to assert that calling Harvie a "subject" "carries no implication of wrongdoing [and] is not conduct which a reasonable person would find highly offensive." *Id.* at 16. The question is not whether the word "subject," considered in isolation, would offend a reasonable person. Rather, it is whether repeatedly portraying Harvie as implicated in federal criminal corruption would place him before the public in a highly offensive false light. A reasonable person could find such a portrayal highly offensive, particularly where the Amended Complaint alleges that Harvie testified as a witness and was never charged with or publicly accused

of criminal wrongdoing. *See Psota v. New Hanover Twp.*, No. 20-5004, 2021 WL 6136930, at *34 (E.D. Pa. Dec. 29, 2021) ("A reasonable person in Plaintiff's position would find submission of his name on a Brady List [of law enforcement officials deemed untrustworthy] for false reasons to be highly offensive.").

Finally, Defendants argue that "false light carries the same First Amendment protections as defamation," relying on *Tannous v. Cabrini Univ.*, 702 F. Supp. 3d 317 (E.D. Pa. 2023), to contend that selectively presenting facts cannot render constitutionally protected opinions actionable. MTD 16–18. But *Tannous* is distinguishable. There, the court concluded the defendant's characterization of the plaintiff as antisemitic, based on the plaintiff's publicly available tweets, constituted protected opinion. *Tannous*, 702 F. Supp. 3d at 321–22. The defendant had republished allegedly "cherry-picked" tweets by the plaintiff and expressed an interpretation of them. *Id.* at 321. Even if those statements were selectively presented, the court determined that the characterization did not imply undisclosed defamatory facts. *Id.* at 322.

Here, Defendants are not interpreting Harvie's own words or conduct. They are leveling their own accusation, that Harvie is an "FBI corruption subject," which implies the existence of undisclosed facts establishing his involvement in criminal wrongdoing. Such statements are not constitutionally protected simply because Defendants call them political rhetoric or opinion. Accordingly, *Tannous* does not compel dismissal of Harvie's false-light claim.

Defendants' accusations concerning Harvie's alleged inappropriate relationship with a Bucks County employee likewise convey factual implications of misconduct and abuse of public office. They cannot be dismissed as constitutionally protected opinion merely because Defendants characterize them as rumors or conjecture. The Amended Complaint alleges that those accusations were false and that Defendants published and republished them without effort to verify their truth.

Am. Compl. ¶¶ 87–96. Website posts and mass emails that link to a crude Facebook post accusing Harvie of engaging in inappropriate conduct with a named Bucks County employee and improperly influencing her promotion would be highly offensive to any reasonable person.

Defendants further contend that Harvie's false-light claim fails for lack of actual malice. MTD 16. As discussed above, the Amended Complaint alleges facts supporting a plausible inference that Defendants had knowledge of or reckless disregard for the false impression conveyed by their publications. Count II therefore states a claim for false light invasion of privacy.

## III. Defendants Are Not Entitled to Fees Under Pennsylvania's Anti-SLAPP Act.

Defendants contend that they can invoke the immunity and fee-shifting provisions of Pennsylvania's recently enacted Uniform Public Expression Protection Act ("Anti-SLAPP") ("the Act"), 42 Pa. Cons. Stat. §§ 8340.11–8340.18, in federal court by prevailing on a Fed. R. Civ. P. 12(b)(6) motion to dismiss a cause of action based on protected public expression. MTD 19–24. But both the Act's immunity and fee-shifting provisions are procedural, not substantive, and therefore do not apply in federal court. Even if they did, the Act and the Federal Rules of Civil Procedure make clear that Defendants are not entitled to fees from Bob Harvie for Congress.

### A. Defendants Fail to Show that the Act's Immunity and Fee-Shifting Provisions Apply in Federal Court.

Defendants summarily conclude that they are immune from civil liability under § 8340.15(1)(i) and (ii), relying generally on their arguments for dismissal. As a threshold matter, Defendants offer no meaningful analysis as to whether and to what extent the Act's immunity and fee-shifting provisions apply in federal court. Instead, they rely on a single case, *Lento L. Grp. PC v. Estrada*, No. 25-2763, 2026 WL 2100471, at *11 (E.D. Pa. July 21, 2026), for the proposition that § 8340.16(c) "explicitly makes the immunity defense [of the Anti-SLAPP statute] available" in federal court through motions other than an Anti-SLAPP motion. But Defendants concede that

"Section 8340.16 is not yet effective," MTD 20. Even if it were, § 8340.16(c) cannot impose state procedural rules on federal court.

Defendants try to avoid the provision's procedural nature by asserting that "[t]his Court has already determined that the Act's immunity and mandatory fee-shifting provisions are substantive and apply in federal court." MTD 21 (citing *Lento*, 2026 WL 2100471, at *16). But *Lento* is neither binding on this Court nor representative of a settled consensus among Pennsylvania's federal courts. *See Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another."). Indeed, in *Jakes v. Youngblood*, 782 F. Supp. 3d 210 (W.D. Pa. 2025), *Salaam v. Trump*, 350 F.R.D. 14 (E.D. Pa. 2025) ("*Salaam II*"), and *Henrich v. Colby's Crew Rescue*, No. 25-4961, 2026 WL 839119 (E.D. Pa. Mar. 26, 2026), the courts held that § 8340.15 conflicts with the Federal Rules of Civil Procedure. Applying § 8340.15 would "blur[] the lines between the pleading and summary-judgment stages" of Rules 12(b)(6) and 56, respectively, and therefore § 8340.15 cannot operate in federal court as a procedural device under the *Erie* doctrine. *Salaam II*, 350 F.R.D. at 19.

The issue of fee-shifting under the Act is also unsettled in federal courts in Pennsylvania. While *Lento* determined that fee-shifting under § 8340.18 is substantive law applicable in federal court, 2026 WL 2100471, at *15, *Henrich* concluded that, because "[s]ection 8340.15 creates a procedural mechanism that does not apply in federal court, Section 8340.18 by necessity is not applicable either," 2026 WL 839119, at *9. Likewise, in *McCaffery v. N.Y. Univ. Sch. of L.*, No. 25-2429, 2026 WL 746606, at *12 (E.D. Pa. Mar. 16, 2026), the court declined to award attorneys' fees for defamation and false light claims, observing that "it is unclear whether the anti-SLAPP law—and particularly its provision providing for attorneys' fees, court costs, and litigation

expenses under section 8340.18 to parties found immune from a cause of action under section 8340.15—applies to this matter." Here, Defendants have failed to establish why this Court should follow *Lento*, rather than contrary authorities—none of which Defendants discuss—in determining if the Anti-SLAPP Act's immunity and fee-shifting provisions apply to this case in federal court.

### B. Defendants Are Not Entitled to Fees Against Bob Harvie for Congress.

Defendants are not entitled to fees against Bob Harvie for Congress ("the Committee") under § 8340.18(a)(2) of the Act, which applies only when "the opposing party voluntarily discontinues the action under Pa.R.Civ.P. No. 230 (relating to voluntary nonsuit)." The Committee did not discontinue the action under Pa.R.Civ.P. 230, as Defendants claim. MTD 22. Rather, as Defendants acknowledge, Harvie timely filed an Amended Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B). *Id.* Defendants' attempt to convert that amendment into a fee-triggering event fails as a matter of law.

#### 1. The Committee Did Not Discontinue the Action Under Pa.R.Civ.P. 230.

Section 8340.18(a)(2) is triggered only if a party terminates an action pursuant to Pa.R.Civ.P. 230, which permits voluntary nonsuit "during the trial" and requires "leave of court upon good cause shown." Pretrial terminations are governed by a different rule, Pa.R.Civ.P. 229, which the Act does not reference. There has been no trial here, and no leave of court was sought or granted.

Defendants offer the conclusory argument that, because the Act's fee-shifting provisions are substantive law, they apply here, and "the Court applies them through their federal procedural analogues," i.e., Rule 41(a)(1)(A)(i) and Rule 21. MTD 23. Contrary to Defendants' contention, the Committee took neither a "Rule 41 dismissal" nor a "Rule 21 drop," and neither of these "exit[s]" is a "functional equivalent of a [Pa.R.Civ.P.] 230 discontinuance." *Id.* Rule 41(a)(1)(A)(i)

governs voluntary dismissal of an action or all claims against a party and "closes the file." *In re Bath and Kitchen Fixtures AntiTr. Lit.*, 535 F.3d 161, 165 (3d Cir. 2008). The Committee filed no such notice of dismissal. Rule 21 requires affirmative court action—the court "may at any time, on just terms, add or drop a party"—and no such order was sought or entered here.

Instead, Harvie filed an Amended Complaint under Rule 15(a)(1)(B), which "supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). An amendment under Rule 15(a)(1)(B) "may avoid the need to decide [a Rule 12] motion or reduce the number of issues to be decided, and will expedite the determination of issues that otherwise might be raised seriatim." Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment. Parties are permitted to omit other parties upon amendment. *See, e.g.*, *Mullin v. Balicki*, 875, F.3d 140, 156 (3d Cir. 2017) ("Parties voluntarily dropped from an amended complaint do not remain in the case."). Defendants' attempt to recast Harvie's amendment as of right as a voluntary discontinuance is a specious attempt to trigger fee-shifting under § 8340.18(a)(2) of the Act. Because the Committee did not voluntarily discontinue this action under Pa.R.Civ.P. 230, the statutory condition for mandatory fee shifting under § 8340.18(a)(2) has not been satisfied, and Defendants' arguments about whether any dismissal was with or without prejudice are immaterial.

Nor does Defendants' reliance on 42 Pa. Cons. Stat. § 8320.1(a)–(b) advance their claims for fees. As Defendants note, that provision creates a separate cause of action. It provides no basis for a fee award in this proceeding. Likewise, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), merely establishes that a court retains jurisdiction to resolve collateral matters following voluntary dismissal; it does not establish Defendants' entitlement to attorneys' fees under § 8340.18(a)(2).

**2. Rule 15(a)(1)(B) Governs and Precludes Defendants' Proposed Application of the Anti-SLAPP Act.**

Even accepting Defendants' argument that, pursuant to *Lento*, the Act's fee-shifting provisions are substantive law and apply in federal court, § 8340.18(a)(2) cannot be applied here in a manner that conflicts with Rule 15(a)(1)(B). "A valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Berk v. Choy*, 607 U.S. 187, 192 (2026). A court looks at the "plain meaning" of a Federal Rule to determine whether it "answers the question in dispute" and thus displaces the contrary state law. *Id.* (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)).

Rule 15(a)(1)(B) expressly permits a plaintiff to amend a pleading "once as a matter of course" within 21 days after service of a Rule 12(b), (e), or (f) motion. Here, the Amended Complaint deleted the Committee from the case caption, struck allegations describing the Committee and its mailing address, and removed the Committee's damages theory. In response to these permissible amendments, Defendants seek to impose attorneys' fees under the Act. Defendants cite no authority supporting the conversion of an amended complaint under Rule 15 into a voluntary nonsuit that can trigger fee-shifting under § 8340.18(a)(2). At bottom, this move directly conflicts with Rule 15(a)(1)(B)'s express provision permitting amendment as of right. *See, e.g.*, *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (granting an anti-SLAPP motion to strike a complaint without leave to amend would "directly collide" with Rule 15(a)'s policy favoring liberal amendment). In sum, Defendants cannot invoke the Act's fee-shifting provisions under as a penalty for amending a complaint as of right under Rule 15(a)(1)(B).

## CONCLUSION

For the foregoing reasons, Plaintiff Bob Harvie respectfully requests that this Court deny Defendants' Motion to Dismiss, including Defendants' request for attorneys' fees under Pennsylvania's Anti-SLAPP statute.

Dated: November 16, 2026

Respectfully submitted,

/s/ *Timothy J. Ford*

Timothy J. Ford (Pa. Id. No. 325290)
Maggie Barker Taylor (Pa. Id. No. 332672)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
Fax: (215) 754-4603
tford@dilworthlaw.com
mbarkertaylor@dilworthlaw.com
*Counsel for Plaintiff Bob Harvie*