**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BOB HARVIE,** *Plaintiff,* v. **DEFENDING AMERICA PAC, INC., *et al.*** *Defendants.* | **CIVIL ACTION** **No.: 2:26-cv-05544** |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT & APPLICATION FOR ATTORNEYS' FEES AND COSTS**

## I. INTRODUCTION

Plaintiff's Opposition serves only as a further ***admission*** that he testified before a federal grand jury investigating corruption in Bucks County local government, "as a former Falls Township elected official," and that this has been public since 2022. Opp. 3, 16; *see* Am. Compl. ¶¶ 4, 31. Importantly, Harvie does not dispute that the Justice Manual definition of "subject," which he pleaded turns on whether a person's "conduct is within the scope of the grand jury's investigation" and says nothing of wrongdoing. Am. Compl. ¶ 60. While Harvie does not dispute his status as a public figure or that the speech concerns a matter of public concern, the Congressman-elect, now asks this Court to hold that a political committee defamed him by merely describing his role in an investigation. Opp. 2, n. 3. The result is at odds with the First Amendment and Pennsylvania's Anti-SLAPP Act makes such an attempt costly.

## II. ARGUMENT

### A. The "Subject" Statements Are Not Capable of Defamatory Meaning.

#### 1. The statements impute no crime, so there is no defamation per se.

Defamation per se requires words which impute conduct constituting a criminal offense or criminal conduct. *See Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. 2000) (citing Restatement (Second) of Torts §§ 570, 571) (cited at Opp. 9). Nothing in "FBI corruption subject" or "subject of an FBI investigation" charges, describes, or implies that Harvie committed a crime. Plaintiff's own pleading supplies the definition. A "subject" is "a person whose conduct is within the scope of the grand jury's investigation." Am. Compl. ¶ 60. The Government's definition describes the scope of an inquiry, ***not guilt***. Further, the same section of the Manual expressly reserves a different term, "target," for a person as to whom there is "substantial evidence linking him or her to the commission of a crime," and it directs that "a grand jury witness" be advised of rights "if such witness is a 'target' or 'subject'" Justice Manual § 9-11.151. Simply put, a grand jury witness may be a "subject." ***Plaintiff has admitted*** he testified "as a former Falls Township elected official" in a probe that reached "local government and politics, unions, contractors, [and] political donations" in Bucks County. Am. Compl. ¶¶ 4, 29.

The Opposition never explains how a former local official, who testified in an investigation of local government is not a person whose conduct is "within the scope" of that investigation. It simply substitutes "wrongdoer" for "subject," and attacks the substitution. Opp. 12. Innuendo may not "enlarge the natural meaning of the words." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (quoting *Sarkees v. Warner–W. Corp.*, 349 Pa. 365, 368 (1944).

Plaintiff fares no better under his proffered case law. *AMI Affiliates, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 94-cv-7194, 1995 WL 752387, at *4 (E.D. Pa. Dec. 15, 1995), involved a false statement that the plaintiff was under criminal investigation. As noted above, Harvie has repeatedly admitted he was called before the grand jury in this investigation, then he denies being the "target" of an investigation. But, the Amended Complaint fails to identify an instance where

Defendants refer to Plaintiff as a "target." *Joseph I*, likewise, does not support Plaintiff's position. The Pennsylvania Supreme Court vacated that judgment and "all substantive orders," rendering the proceedings "null and void," and later held that the Superior Court "erred" in relying on *Joseph I*'s findings at all. *See Joseph v. Scranton Times L.P.*, 634 Pa. 35, 46-47, 83 (2015) (citing *Joseph v. Scranton Times L.P.*, 604 Pa. 677, 987 A.2d 633 (2009) (per curiam)).[1] A vacated opinion is not precedent, nevertheless, it concerned distinguishable facts. *Joseph I* concerned a private figure, not a public official, and the speech at issue indicated that the plaintiffs "engaged in a broad range of criminal enterprises." *Joseph I,* 959 A.2d at 332. That is not the case here, where Plaintiff—a public figure—has identified no statement by Defendants alleging that he committed any crime or engaged in criminal conduct.[2]

**2. The statements are substantially true on the face of the Amended Complaint.**

When "a statement's truth is apparent on the complaint's face," dismissal is proper. *Wang v. Univ. of Pittsburgh*, 181 F.4th 301, 311 (3d Cir. 2026). Every fact which makes "subject" status accurate is pleaded. The investigation, its scope, Harvie's role as a former official, and his testimony. Am. Compl. ¶¶ 4, 29-31, 48. The only "falsity" the Opposition identifies is the one Plaintiff invents, that "subject," "target," and "wrongdoer" are synonymous. Opp. 12. Harvie's own public denial draws the same line as Defendants. *See* Am. Compl. ¶ 38 ("I am not now and

---

[1] Defendants' Motion cited *Joseph I* only for the general definition of defamatory character, MTD 4, a formulation drawn from earlier authority and not affected by the vacatur. Plaintiff, on the other hand, relied on its case-specific per se finding, which is so affected.

[2] There is no "public reporting that Harvie testified ***only*** as a witness." Opp. 10 (emphasis added). The articles the Amended Complaint cites for that proposition say no such thing. *See* Am. Compl. ¶ 31 n.3; MTD 14 n.9; Am. Compl. ¶¶ 37–38 & n.7; Am. Compl. ¶ 44. Every "witness only" characterization in this record originates with Harvie. Importantly, the Amended Complaint's gloss on the 2022 article (Am. Compl. ¶ 31), is contradicted by the article itself. The Court may consider the article as the Amended Complaint relies on it. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

never have been the ***target*** of any criminal investigation") (emphasis added). A denial of target status does not deny subject status.

**3. The "FBI file" post does not imply undisclosed facts.**

Plaintiff's "mixed opinion" theory rests on a single statement: "[w]ait until they see everything that's in your FBI file, Bob." Opp. 14-15; Am. Compl. ¶¶ 70–71. The Amended Complaint defeats any inference of secret knowledge, instead pleading Defendants operate a website "[t]racking whether Bob Harvie has publicly released his complete, unredacted FBI grand jury transcript" and related records. Am. Compl. ¶ 66. A demand for release is not a claim of possession. The factual basis for the "subject" characterization—the grand jury testimony—has been publicly reported since 2022, and the *Inquirer* article Harvie quotes connected Defendants' statements to that testimony. Am. Compl. ¶ 59. A characterization resting on disclosed facts constitutes protected opinion. *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985).

**B. The county-employee statements were published as rumor.**

Plaintiff accuses Defendants of "now" recasting the county-employee statement as "word on the street." Opp. 12. The recasting is Plaintiff's, as the full sentence reads: "*[w]ord on the street is that it may have had something to do with* Harvie getting a little too cozy with a county employee," and it appears in the Amended Complaint itself. Am. Compl. ¶ 87 & n.29 (emphasis added). The Opposition, however, quotes only a fragment of the sentence (Am. Compl. ¶¶ 87, 89) and asks the Court to read the rest out of the record (Opp. 12, 17), which is impermissible. *See Salaam v. Trump*, 777 F. Supp. 3d 414 (E.D. Pa. 2025) ("*Salaam I*"). A plaintiff's interpretation "steers the analysis" only if the statement is "reasonably capable" of bearing it in context. *Id*. at 426. Instantly, an attributed, hedged, indefinite remark linked to an identified third-party's crude

post signals rumor, not an assertion of fact by the speaker. *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993).

**C. The Amended Complaint does not plausibly allege actual malice.**

Actual malice requires facts demonstrating Defendants "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Plaintiff fails to plead Defendants had such doubts.

*First*, Plaintiff takes Pack's post out of context, asserting Pack responded to the cease-and-desist letter by "stating that he 'Agreed,'" Opp. 6, 17. This is contrary to the Amended Complaint, which states Pack posted "in response to a post by the National Republican Congressional Committee (NRCC)" and cites a URL on the NRCC's account. Am. Compl. ¶ 80, n.25. Pack response, "Agreed," was in response to the NRCC. Plaintiff's screenshot omits the NRCC post and the Opposition relabels Pack's reply as an admission. At most, the post shows that Pack read the letter, disagreed with it, and said so, which hardly meets the standard of "serious doubt." A speaker's refusal to retract on demand is not malicious. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) ("[D]enials, however vehement," are "so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error") (quoting *Edwards v. Nat'l Audubon Soc'y., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)).[3]

*Second*, every public report Plaintiff cites confirms Harvie testified before the grand jury in the Bucks County probe and none report he testified "only as a witness." *See supra* n.2. Every public denial quoted by Plaintiff, denies he was a "target" or "under investigation." Am. Compl. ¶¶ 31, 38, 40, 44. Those denials are silent on whether he was a subject. A publisher who uses a

[3] The Cease-and Desist letter predates and does not mention the statements regarding the county employee (Am. Compl. ¶¶ 76, 82, 87, Ex. A), and Plaintiff alleges no demand that Defendants retract them.

term as the government defines it, about a fact which Plaintiff admits, cannot have doubted its truth.

*Third*, the *Inquirer* article was published October 19, 2026, after nearly every statement at issue. Am. Compl. ¶¶ 43, 69, 72. The article only reports Harvie's self-description of the circumstances. A later article is wholly insufficient to supply an earlier state of mind.

*Fourth*, Plaintiff pleads Defendants "made no effort to verify" the third-party post. Am. Compl. ¶ 94. Without concession as to the veracity of such averments, the "[f]ailure to investigate does not in itself establish bad faith." *St. Amant*, 390 U.S. at 733. Moreover, it is not "sufficient to establish reckless disregard . . . even when a reasonably prudent person would have done so," *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 688. Plaintiff identifies no "obvious reasons to doubt the veracity of the informant," *St. Amant*, 390 U.S. at 732. Plaintiff merely concludes the rumor was false. "Purposeful avoidance" requires a showing the publisher deliberately avoided confirming what it already suspected, *Harte-Hanks Commc'ns, Inc*. 491 U.S. at 692 (citing *St. Amant*, 390 U.S. at 731, 733). The Amended Complaint is silent in this regard.

**D. Count II fails, along with Count I.**

Plaintiff frames the false-light question as "whether repeatedly portraying Harvie as implicated in federal criminal corruption would place him before the public in a highly offensive false light." Opp. 19. The Amended Complaint, however, pleads Harvie *was* a participant in a federal criminal corruption investigation as he was called before the grand jury investigating Bucks County government, as an official of that government. Am. Compl. ¶¶ 4, 29-31. Describing a public figure's role in an investigation, using the investigators terminology, is not a "major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Curran v. Children's Serv. Ctr. of*

*Wyoming Cnty., Inc.*, 396 Pa. Super. 29, 39–40, 578 A.2d 8, 13 (1990) (quoting Restatement (Second) of Torts § 652E, cmnt c). Importantly, Plaintiff's own authority dismissed a false-light claim at the pleading stage, holding commentary which is "unflattering and annoying" is not "highly offensive." *Henrich v. Colby's Crew Rescue*, No. 25-4961, 2026 WL 839119, at *6-7 (E.D. Pa. Mar. 26, 2026). *Psota v. New Hanover Twp.*, No. 20-5004, 2021 WL 6136930 (E.D. Pa. Dec. 29, 2021) (cited at Opp. 20).

Plaintiff's distinction of *Tannous* is one without a difference. The defendant in *Tannous* characterized the plaintiff based on the plaintiff's public tweets while Defendants characterize Harvie based on public reports of his participation in the investigation. Am. Compl. ¶¶ 31, 66. In both cases, the characterization rests on public facts the audience can evaluate, and in both "selective" presentation of those facts yields "merely an opinion about Plaintiff," protected under Count II as under Count I. *Tannous v. Cabrini Univ.*, 702 F. Supp. 3d 317, 321 (E.D. Pa. 2023).

**E. Plaintiff Concedes the Limitations Bar.**

Plaintiff's Opposition does not respond to Defendants' showing that claims based on statements first published before August 5, 2025 are time-barred under 42 Pa. C.S. § 5523(1) and the single-publication rule. MTD 18. The point is therefore conceded.

**F. The Anti-SLAPP Act Applies in This Court and Fees are Mandatory.**

**1. Plaintiff's authorities do not undermine *Lento*.**

Plaintiff insists the Anti-SLAPP Act's immunity and fee shifting provisions do not apply in federal court. Opp. 21. This position is contrary to the holding of this Court. *See Lento L. Grp. PC v. Estrada*, No. 25-2763, 2026 WL 2100471, at *16 (E.D. Pa. July 21, 2026) ("***a party in federal court who prevails on a motion to dismiss under Rule 12(b)(6) is entitled to attorney's fees, court costs, and expenses of litigation*** under 42 Pa. C.S. § 8340.18(a)(1)") (emphasis added).

The cases Plaintiff cites do not undermine that holding. In *Jakes* and *Salaam II* the defendants moved only under the Act's special-motion procedure, § 8340.16, which is not yet effective, *Lento*, 2026 WL 2100471, at *11 and the courts held that a state pretrial-dismissal mechanism importing summary-judgment standards cannot displace Rules 12 and 56. *Jakes v. Youngblood*, 782 F. Supp. 3d 210, 215, 218 (W.D. Pa. 2025); *Salaam v. Trump*, 350 F.R.D. 14, 15, 20 (E.D. Pa. 2025) ("*Salaam II*"). Both expressly declined to decide whether § 8340.18 applies in federal court. *Jakes*, 782 F. Supp. 3d at 220; *Salaam II*, 350 F.R.D. at 21 n.8. ***Defendants have not filed a special motion***, they moved under Rule 12(b)(6), and seek fees because under that ordinary standard, the Amended Complaint fails to state a claim, the circumstance § 8340.15(1)(ii) describes.

Notably, only *Henrich* reached the fee question, and it did so by analogy to the statutes of the District of Columbia, Texas, and California, ***each of which conditions fees on prevailing on a special motion***. 2026 WL 839119, at *9 (citing *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 n.5 (D.C. Cir. 2015); *Klocke v. Watson*, 936 F.3d 240, 247 n.6 (5th Cir. 2019); *La Liberte v. Reid*, 966 F.3d 79, 88-89 (2d Cir. 2020)). Section 8340.18 "says nothing of a special motion," applies to any immune party, and expressly preserves the assertion of immunity "through other pleadings and motions." *Lento*, 2026 WL 2100471 at *11, *14 n.12 (quoting § 8340.16(c)). *Lento* considered *Henrich* and declined to follow it for exactly these reasons. *Id*. at *13-*14. *Henrich* is now on appeal. No. 26-1874 (3d Cir.). In *Mccaffery v. New York Univ. Sch. of L.*, No. 25-2429, 2026 WL 746606, at *12 (E.D. Pa. 2026).

**2. *Lento* is correct under *Erie*, *Shady Grove*, and *Berk*.**

*First*, no Federal Rule collides with §§ 8340.15 and 8340.18. A Rule displaces state law only when it "answer[s] the same question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

*Co.*, 559 U.S. 393, 398-99 (2010); *Berk v. Choy*, 607 U.S. 187, 192 (2026). Rule 12(b)(6) answers whether a complaint states a claim. Section 8340.18 answers a different question, what follows when a claim based on protected public expression fails that test, and does so by incorporating the federal standard, not altering it. *Lento*, 2026 WL 2100471, at *14.

*Second*, "[f]ee-shifting statutes are generally considered substantive under *Erie* because they are tied to the outcome of the litigation." *Paucek v. Shaulis*, 349 F.R.D. 498, 516 (D.N.J. 2025) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–54 (1991)). The Third Circuit applies state fee rules in diversity absent conflict with federal policy. *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977).

*Third*, *Erie* points the same way: if a SLAPP plaintiff could escape mandatory fees by filing in federal court, Pennsylvania's substantive policy would turn on the citizenship of the parties. *Lento*, 2026 WL 2100471 at *15.

**3. Fees are also owed by the Committee.**

After Defendants asserted immunity, the Committee abandoned its claims without adjudication. Plaintiff's principal response is that § 8340.18(a)(2) speaks of a discontinuance "under Pa.R.C.P. No. 230." Opp. 23-24. That reading confines a provision aimed at plaintiffs who drop out after immunity is asserted to the rare plaintiff who takes a nonsuit mid-trial, which is irreconcilable with the Anti-SLAPP Act's command of "[b]road construction," § 8340.12(4), and with § 8340.16(f), which contemplates a party who "voluntarily discontinue[s] all or part of the party's action" after immunity is asserted, followed by a request for fees. Plaintiff's own authority describes the instant matter, where "parties voluntarily dropped from an amended complaint do not remain in the case." *Mullin v. Balicki*, 875 F.3d 140, 156 (3d Cir. 2017) (cited at Opp. 24). A voluntary drop is a voluntary discontinuance. Rule 15(a)(1)(B) is not an obstacle under *Berk*, rather

it answers whether Harvie needed leave to amend. A fee award against a departed party is a collateral matter within the Court's authority. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990).

## III. CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice, and the Defendants should be awarded attorney's fees, court costs, and expenses of litigation, jointly and severally against Plaintiff Bob Harvie and Bob Harvie for Congress.

Respectfully submitted,

**BOCHETTO LENTZ & HEIM, P.C.**

Date: November 25, 2026

By: */s/ George Bochetto*

George Bochetto, Esquire
Matthew Lamorgese, Esquire
PA Bar No.: 27783, 339731
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
gbochetto@blhlegal.com
mlamorgese@blhlegal.com
*Local Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*

**LEX POLITICA**
Dennis W. Polio, Esquire
D.C. Bar No.: 198054
611 Pennsylvania Ave. SE, #353
Washington, DC 20003
(540) 268-2806
dpolio@lexpolitica.com
*Counsel for Defendants*
*Defending America PAC, Inc.*
*and Chris Pack*
Admitted *Pro Hac Vice*

| | |
|---|---|
| **BOB HARVIE,** | **CIVIL ACTION** |
| *Plaintiff,* | **No.: 2:26-cv-05544** |
| v. | |
| **DEFENDING AMERICA PAC, INC., *et al.*** | |
| *Defendants.* | |

**CERTIFICATE OF SERVICE**

I, George Bochetto, Esquire, hereby certify that a true and correct copy of the forgoing was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Date: November 25, 2026

By: */s/ George Bochetto*
George Bochetto, Esquire
1524 Locust Street
Philadelphia, PA 19102
gbochetto@blhlegal.com
*Attorney for Defendants*